### McCLELLAN v. TAYLOR.

1. Injunction—Trespass—Damages.—Where numerous acts are being committed, and their continuance threatened by one person on the lands of another, which constitute trespass, and the injury resulting therefrom is trifling as compared with the expense of prosecuting actions at law for damages, injunction will lie to restrain the trespass. *Justice Pope dissenting.*
2. Trespass—License—Right of Way.—The party using the right of way here was a mere licensee.

Before Gary, J., Charleston, August, 1897.    Reversed.

Action for injunction by Lawrence P. McClellan *v.* George T. Taylor. The following is the agreement under which defendant claimed the right of way:

Articles of agreement for compromise of landing question at McClellanville, between George T. Taylor and the heirs of Archibald J. McClellan. First. It is agreed that George T. Taylor shall have the privilege to use the said landing, together with 100 feet of the shore line, including the wharf site, for the purpose of beaching his boats, for the object of repair whenever required; provided, that in said user the wharf or wharf site shall not be obstructed, and also for the purpose of securing and delivering freight; and further, that said Taylor shall have a right of way to and from said landing either in front or in rear of the lots now owned by A. H. DuPree, said rights not to be exclusive          for which said privileges the said Taylor shall pay an annual rent of $3. Second. Also agreed that said privileges shall be enjoyed by said Taylor and his sons, William and Daniel,

so long as the title of the lot now standing in the name of the wife of the said George Taylor, shall remain in her during his life, or as long as he and his sons shall own or occupy the said lot. Third. It is provided that if J. Palmer McClellan, or in case of his death the next living representative of the estate of A. J. McClellan, shall prevent any person or persons using said right of said way to said landing for the purpose of carrying or receiving freight to or from the boats of said Taylor, then it is agreed that the said J. P. McClellan, or the representative of the estate of A. J. McClellan for the time being, shall in like manner stop and prevent all other persons from using a right of way to said landing for the purpose of taking or receiving freight from any other boat or boats, subject, however, to the power of said Taylor and McClellan jointly to permit any person or persons to use said right of way for above purposes; provided, however, that said third paragraph of this agreement shall not apply to the said Taylor individually and his boat hands, his sons and wife, nor to said J. Palmer McClellan and family, A. H. DuPree and family, L. P. McClellan and family, and W. B. McClellan and family. Witnesses: Henry W. Smith, as to Geo. T. Taylor; Julian Mitchell, as to J. Palmer McClellan, J. Palmer McClellan, E. A. DuPree, L. P. McClellan, W. B. McClellan, S. E. McClellan, Geo. T. Taylor.

Master G. H. Sass concludes as follows: A large mass of testimony has been taken, both oral and documentary, and the same is filed with this report. I have carefully considered the same and find the facts to be as follows:

That the plaintiff is now the owner of lots 3 and 5, containing the Lime Kiln landing and seashore, and part of the way claimed; lot 3 having been sold to him by the heirs of A. J. McClellan, and lot 5 having been sold to him by Laura V. McClellan, the wife of Palmer McClellan, to whom it had been conveyed by the heirs of McClellan after the date of the agreement. That the annual sum due by Taylor under the agreement has not been paid, not more than $6 having been paid by him altogether since the date of the agreement.

That on the 10th of May, 1894, the plaintiff demanded payment from Taylor of $36 rent of landing from October, 1881, to October, 1893, and same not being paid on July 18th, 1894, he notified the defendant in writing that privilege allowed him under the agreement was revoked, and that he was thereby forbidden to enter upon the said lands for any purpose whatever; and subsequently on the 23d July, 1894, he renewed said notice, and further notified him of his intention to apply to the Courts in the matter. That Taylor disregarded the said notice and continued to enter upon the land, and that when the way was obstructed by the plaintiff, Taylor forcibly removed the obstructions.

I find further, as matter of fact, that the testimony does not support the claim as to the public character of the Lime Kiln landing and the way leading thereto; but that on the contrary the weight of the evidence sustains the plaintiff's position that the landing and the way are the private property of the plaintiff. That no sufficient evidence of any such user by the public as would give a right by prescription has been produced, nor is there satisfactory evidence of any intention on the part of McClellan or his heirs to make a dedication to public use of said way and landing by writing, or by declaration, or by acts indicating such intention, but that on the contrary the weight of the evidence is in favor of the view that such use was altogether permissive. And I further find that no adverse continuous use for twenty years has been proved.

As matters of law I find: (1) That the agreement creates no easement in Taylor, because an easement or incorporeal hereditament can only be created and conveyed by a grant or conveyance under seal, or by long user from which such conveyance is presumed to have been made (*Cagle* v. *Parker*, (N. C.), 2 S. E. Reporter, 76), and cannot be conferred by parol, and that this agreement is not under seal, and as to several of the signatures is even unwitnessed. (2) That the agreement is not a lease, because "an instrument that merely gives to another the right to use premises for a

specific purpose, the owner of the premises retaining the possession and control of the premises, confers no interest in the land, and is not a lease but a mere license." Wood's Landlord and Tenant, sec. 227, and cases quoted in note. The agreement does not use words of demise, and it specially provides that the privileges granted shall not be exclusive in Taylor, and that the heirs of McClellan reserved the right to confer similar privileges upon others, provided they did not interfere with those granted to Taylor. No interest in the land is conferred by the agreement. The distinction between a lease and a license is thus stated in McAdam on Landlord and Tenant, page 51, "Where the intention of the parties, as expressed in the instrument, is that the one shall divest himself of the exclusive possession of the subject matter, and the other come into it for a determinate period, that is a lease (*Reg.* v. *Morrison,* 32 L. J. M. C., 245). But if the intention of the parties is that the instrument should operate as a mere license, and that exclusive possession should not be given, then it is not a lease, although it may contain the usual words of demise (*Taylor* v. *Caldwell,* 3 B. & S., 826, &c.) Nor does the fact that a definite period is stated in the agreement during which the license is to continue, viz: "So long as the title to the lot now standing in the name of the wife of the said George Taylor shall remain in her, during his life or as long as he and his sons shall own and occupy the said lot," avail of itself to convert the agreement into a lease. There must be also a parting with the possession by the grantors to work such a result. In Bainbridge's Law of Mines and Minerals, it is said (page 301) : "It has certainly been determined that the intention of the parties may constitute an actual demise, whether the words be in the form of a license, or a covenant or an agreement. But it must sufficiently appear from the construction of the granting part that it is clearly the intention of the parties that the one should divest himself of the possession, and that the other should come into it for a determined time." I hold, therefore, as matter of law that the agreement is not a

28—54

lease, and further: That the agreement is a license, and is revocable. In *Wallis* v. *Harrison,* 4 Meeson and Welsby's Reports, p. 543, Lord Abinger, C. B., said: "A mere parol license to enjoy an easement on the land of another does not bind the grantor after he has transferred his interest and possession in the land to a third person. I never heard it supposed that if a man out of kindness to a neighbor allows him to pass over his land, the transferee of that land is bound to do so likewise." And Parke, B., concurring, said: "I take it to be clear that a parol executory license is counter-mandable at any time, and if the owner of land grants to another a license to go over or do any act upon his close, and then convey away that close, there is an end to the license; for it is an authority only with respect to the soil of the grantor, and if the close ceases to be his soil, the authority is instantly gone." See, also, McAdam on Landlord and Tenant, pp. 52 and 53, and cases quoted, and Bainbridge's Law of Mines, &c., page 306. Nor is there any weight to be attached to the equitable defense invoked by the defendant. There is no evidence that Taylor has been put to any expense with regard to the license, nor that the license has been so far executed that its revocation would work a great wrong to the licensee (*Meetz* v. *R. R. Co.,* 23 S. C., p. 19). I fail to perceive on what ground the equitable jurisdiction of the Court can be invoked on his behalf. (4) Looking at the matter independently of the agreement, the evidence having failed to show, as heretofore found, any dedication or adverse use, it is manifest that the defense on those grounds cannot be maintained. I, therefore, recommend that the prayer of the complaint be granted, and that judgment be entered against the defendant in conformity thereto.

From Circuit decree, reversing master, plaintiff appeals.

*Messrs. Benj. H. Rutledge* and *Lord & Burke,* for appellant cite: *Injunction will lie in cases of repeated trespass, irreparable damage being likely to result, and to prevent*

*multiplicity of suits:* 43 N. Y. Sup., 7; 24 Penn., 160; 55 N. Y., 220; 22 S. E., 499; 26 S. C., 272; 40 S. W., 584; 2 Pet., 215; 7 Watt., 618; 19 How., 278; 66 N. W., 146; 39 Pa., 399; 6 Pa., 777; 41 Pac., 11; 46 Pac., 168; 17 S. C., 77. *Also, where the acts of trespass may become the foundation or evidence of an adverse right, although no actual damage:* 64 Cal., 64; 89 Cal., 456; 18 Cal., 461; 43 N. Y. S., 30. *And where numerous trespasses are committed under claim of right, though damages are trifling:* 45 N. Y. S., 678; 13 Hun., 285; 20 Kan., 47; 24 N. E., 686. *Solvency or insolvency of defendant not material fact:* 66 N. W., 146; 64 Cal., 64; 46 Pac., 168; 22 S. E., 272. *The agreement is a license and revocable:* 3 S. C., 186; 14 C. B. (N. S.), 634; 4 M. & W., 543; 11 Mass., 537; 13 M. & W., 838. *The way is not identified:* Dud. L., 94; 2 McC., 452; 3 McC., 139. *Nor is it dedicated by adverse user:* 2 McC., 432, 499; 3 McC., 139; 1 Bail., 58; 4.McC., 536; 2 Hill L., 389; 1 Spear, 21; Dud. L., 94; 3 Rich., 87; 6 Rich., 400; 2 Rich., 138; 41 S. C., 20; 47 S. C., 375. *And it is not a right of way appurtenant:* Whaley *v*. Stevens, 21 S. C.

*Messrs. Murphy & Legare,* contra, filed no argument.

March 21, 1899. The opinion of the Court was delivered by

Mr. Justice Gary. The facts of this case are clearly set forth in the report of the master, which will be published by the Reporter. The action was for perpetual injunction, on account of repeated and threatened trespasses to the plaintiff's private landing. So much of the complaint as relates to the alleged trespasses is as follows: "IV. That on 20th July, 1894, plaintiff gave notice to defendant that he revoked his license or privilege of entering upon said land or any part thereof, and notified him not to enter upon the same. V. That on same day last aforesaid, plaintiff closed the gates on his private way leading to said landing, and on 23d July the defendant forcibly and wilfully broke down the fence across

the private way leading to the landing, and also another part of plaintiff's fence around said premises, and entered and trespassed upon said premises. That on the afternoon of the same day, plaintiff repaired and restored the fences. That on 24th July, 1894, the defendant again broke down the said fence wilfully and forcibly near the said landing, and entered and trespassed upon said premises. That on the afternoon of the same day plaintiff again put up the fence in the presence of defendant. As soon as he had finished defendant again broke it down, and threatened to do so as often as it should be put up. And since that time the said defendant has been continually engaged in acts of trespass and annoyance on said premises, to the great disturbance of plaintiff and his family. VI. That the plaintiff has no adequate remedy by a simple action for damange for said trespass; that defendant threatens to continue them indefinitely; that he will be driven to a multitude of suits to maintain his rights, unless defendant be restrained from such further trespasses; that his dwelling house where he resides with his family is immediately adjacent to the said landing and to the place where said trespasses are committed and threatened to be committed, and that said acts of defendant have been a source of great annoyance to the plaintiff and his family, and tend greatly to provoke a breach of the peace. Wherefore, plaintiff prays judgment against the defendant, that he be perpetually enjoined from any entry upon the said premises of plaintiff by himself, his agents or servants, and from committing any and all trespasses thereon." The master recommended that the prayer of the complaint be granted, but the Circuit Judge, while concurring with the master in his findings of fact, reversed his conclusions of law, and ordered that the writ for a permanent injunction be refused.

The plaintiff appealed upon several exceptions, which need not be considered in detail, as the practical question raised by them is whether the allegations of the complaint (which were sustained by the testimony) entitled the plaintiff to equitable relief by injunction. The doctrine

is thus stated in section 1357 of Pom. Eq. Jur.: "If a trespass to property is a single act, and is temporary in its nature and effects, so that the legal remedy of an action at law for damages is adequate, equity will not interfere. The *principle* determining the jurisdiction embraces two classes of cases, and may be correctly formulated as follows: (1) If the trespass, although a single act, is or would be destructive, if the injury is or would be irreparable—that is, if the injury done or threatened is of such a nature. that, when accomplished, the property cannot be restored to its original condition, or cannot be replaced, by means of compensation in money—then the wrong will be prevented or stopped by injunction. (2) If the trespass is *continuous* in its nature, if repeated acts of wrong are done or threatened, although each of these acts taken by itself may not be destructive, and the legal remedy may, therefore, be adequate for each single act, *if it stood alone,* then, also, the entire wrong will be prevented or stopped by injunction, on the ground of avoiding a repetition of similar actions. In both cases the ultimate criterion is the inadequacy of the legal remedy. All the cases, English and American, have professed to adopt the inadequacy of legal remedies as the test and limit of the injunction jurisdiction; but in applying this criterion, the modern decisions, with some exceptions among the American authorities, have certainly held the injury to be irreparable and the legal remedy inadequate, in many instances and under many circumstances, where Chancellor Kent would probably have refused to interfere. It is certain that many trespasses are now enjoined which, if committed, would fall far short of *destroying* the property, or rendering its restoration to its original condition impossible. The injunction is granted, not merely because the injury is *essentially* destructive, but because, being continuous or repeated, the full compensation for the entire wrong cannot be obtained in one action at law for damages * * *" In the case of *Allen* v. *Martin*, Law Reports, 20 Eq., 467, the following language from the case of *Goodson* v. *Richardson*,

Law Reports, 9 Chanc., 226, is quoted with approval: "The defendant in this case is admittedly a trespasser, and he proposes to continue that trespass from day to day * * *. It is said that we ought to allow this to be done; that we ought, in fact, to dismiss the plaintiff from this Court, and tell him to find his way to another Court, in which he is to bring an action for the wrong for which there is no defense whatever * * *. I do not know whether more than one will be required; and then, having succeeded in one action, or two actions, or perhaps three actions, all of which on the facts proved in this case would necessarily result in verdicts for him, he is to come back to this Court and obtain a perpetual injunction on the ground of repeated vexation and repeated actions. I do not think that there is any principle in this Court which will compel us to drive the plaintiff to go through all that litigation before he is entitled to that relief which he would ultimately get when he had gone through it." Mr. Spelling, in his work entitled Extraordinary Relief, at section 342, says: "It is apparent to one giving careful study to the subject that the line of distinction between the two accepted grounds of relief, namely, irreparable injury and multiplicity of suits, is often not discernible, and that the real ground of equitable jurisdiction in trespass may be most properly referred to the general head of the inadequacy of legal remedies. Where numerous acts are being committed and their continuance threatened by one person on the land of another, which acts constitute trespass, and the injury resulting from such acts is or would be trifling in amount as compared with the expense of prosecuting actions at law to recover damages therefor, injunction will lie to restrain the trespass, not alone because of the irreparable nature of the general course of wrong, nor yet for the sole reason that a multiplicity of suits or protracted or vexatious litigation would result; but for both reasons; in other words, because a law Court furnishes no adequate means for complete redress, while in equity, not only may the whole matter of compensation be settled, but the present and future rights

of the parties determined and adjudicated in the same pro-
ceeding." Many other authorities could be cited, but the
foregoing are ample to show that the allegations of the com-
plaint sufficiently set forth a cause of action on the equity
side of the Court.

The respondent gave notice, in pursuance of the proper
practice, that he would ask the Court, in case it was neces-
sary, to sustain the judgment of the Circuit Court
upon the additional grounds set forth in the "Case."
This Court concurs with the master, that the defend-
ant held under a mere license, and that it was revoked.
Having reached the conclusion hereinbefore expressed that
the repeated and threatened acts of trespass called forth the
exercise by the Court of its equitable powers by granting an
injunction, and that the respondent was a mere licensee,
whose privilege had been revoked, the questions presented
by these additional grounds become purely speculative and
need not be considered.

It is the judgment of this Court, that the judgment of the
Circut Court be reversed, and that the case be remanded for
such further proceedings as may be necessary to carry into
effect the conclusions herein announced.

*Note.*—This case was argued at the April, 1898, term of
this Court, but leave was granted Hon. W. P. Murphy, one
of respondent's attorneys, to file an additional argument
within sixty days thereafter, but he died before the expira-
tion of that time. At the recent term of this Court respond-
ent's attorneys announced that they did not desire to file an
additional argument. These facts are stated to explain the
apparent delay in filing the opinion.

MR. JUSTICE POPE *dissenting.* I dissent. The disposi-
tion in Courts to carry injunctions into matters affecting the
issue of title to lands should not be sanctioned.