264 So.2d 57 (1972)
ANCHORAGE YACHT HAVEN, INC., a Florida Corporation, et al., Appellants,
v.
C.T. ROBERTSON, et al., Appellees.
No. 71-435.
District Court of Appeal of Florida, Fourth District.
June 29, 1972.
*58 Cecil T. Farrington, Fort Lauderdale, for appellants.
Thomas Mimms, Jr., and Ronald Fitz-Gerald of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellees C.T. Robertson and Pirate Ports of Florida, Inc.
George B. Pomeroy of Pomeroy & Betts, Fort Lauderdale, for appellee Fort Lauderdale Transfer, Inc.
REED, Chief Judge.
The parties-plaintiff in this case are: Marcella H. Powell (now Loveless); Compere Loveless (who was added by an amendment to the complaint), and Anchorage Yacht Haven, Inc., which is a corporation formed by Marcella and Compere to operate the yacht basin which is the subject matter of the suit.
The parties-defendant are: Fort Lauderdale Transfer, Inc., a corporation, and W.B. Leonard, an officer thereof; Pirate Ports of Florida, Inc. (now by name change, Recreation Corporation of America); and C.T. Robertson, an officer of Pirate Ports of Florida, Inc.
This action was commenced by a complaint in the Circuit Court for Broward County, Florida, on 26 July 1966. The complaint alleged that on 14 June 1966 *59 the defendants, or some of them, negligently injured real property of the plaintiffs in the process of hoisting a boat belonging to Pirate Ports of Florida, Inc., from the water using an elevator belonging to the plaintiffs. The complaint further alleged that after the unsuccessful attempt of 14 June 1966 to lift the boat from the water, the plaintiffs called upon the defendants to remove the boat from the plaintiffs' premises, but defendants failed to do so. The plaintiffs' complaint sought damages and a mandatory injunction for removal of the boat.
The answer of Pirate Ports generally denied liability, but admitted ownership of the boat and admitted a demand by plaintiffs to remove the boat. The answer contained a cross-claim against Fort Lauderdale Transfer, Inc., asserting liability of the latter for damage to the boat by reason of negligent handling. Fort Lauderdale Transfer, Inc., and W.B. Leonard denied negligence with respect to the plaintiffs as well as cross-claimant Pirate Ports and asserted a cross-claim against Robertson and Pirate Ports.
On 29 July 1966 the parties entered into a stipulation on the basis of which the trial court entered an order finding that the boat in question was owned by defendant Pirate Ports of Florida, Inc. The order required defendants Pirate Ports and Fort Lauderdale Transfer to remove the vessel from the plaintiffs' premises on or before 8 August 1966. An unsuccessful attempt was made to remove the vessel before 8 August 1966. As a result, the plaintiffs sought to enforce the order of 29 July by a motion for a contempt citation. On this motion the trial court entered an order which denied the contempt citation and ordered that the cause go to trial on the merits of the issues. By this order the court declined to consider the consent order of July 29th as an adjudication of the merits of any issue.
By the time of the final hearing on 16 and 17 April 1968, the boat had been removed from the premises by the plaintiffs and the trial court considered only the damage claims. The final judgment was rendered on 31 December 1970. It awarded Pirate Ports of Florida, Inc., a judgment for $5,000.00 on its cross-claim against Fort Lauderdale Transfer, Inc., for damages to the boat. The final judgment denied plaintiffs' claim for damages as well as all counterclaims against the plaintiffs and the other cross-claim. The plaintiffs appeal from the final judgment.
The issue simply stated is whether or not the trial court committed error in denying plaintiffs any recovery whatsoever under their claims for (a) negligent injury and (b) damages from trespass.
The following facts are taken from the record or the undisputed recitals in the appellants' brief.
As to ownership of the damaged premises. It appears that in 1959 the yacht basin in question was owned by the plaintiff Marcella Powell and her then husband, Millard S. Powell, as tenants by the entireties. In that year they leased the property to a corporation which they apparently controlled  Anchorage Yacht Basin, Inc. Millard and Marcella were divorced in 1964, but Millard continued as an officer of Anchorage Yacht Basin, Inc. On 14 June 1966 Millard entered into a contract to sell his one-half interest in the yacht basin to Marcella or her designee. The contract provided that possession would be given on closing, and that closing would be within ten days from the delivery or tender to the purchaser of an abstract showing a marketable title. On 23 June 1966 this contract was assigned by Marcella to plaintiff Compere Loveless. Two days after the execution of the contract, the lease to Anchorage Yacht Basin, Inc., was cancelled.
On or about 17 June 1966, a new corporation was formed, evidently by Marcella and Compere, for the purpose of operating the yacht basin. This is the plaintiff Anchorage Yacht Haven, Inc.
*60 The accident of June 14, 1966. Defendant Pirate Ports owned the boat in question, a seventy-foot schooner, the Tondeleyo, which had befallen bad times. The defendant Pirate Ports contracted with Fort Lauderdale Transfer, Inc., to remove the boat from the yacht basin and to transport it to a site selected by Pirate Ports. In the process of the removal of the boat on 14 June 1966, after the contract between Millard and Marcella was signed, the boat was dropped from the lift belonging to the yacht basin. This caused damage both to the boat and to the premises. Sometime after 14 June 1966, but before the complaint was filed, a demand was made by the plaintiffs, or one of them, on defendant Pirate Ports to remove the boat.
As mentioned above, an order was entered on 29 July 1966 calling for a removal of the boat by defendants Pirate Ports of Florida, Inc., and Fort Lauderdale Transfer, Inc., on or before 8 August 1966. The removal was attempted from a shallow area near plaintiffs' basin, and this resulted in a second dropping of the boat. The Tondeleyo was thereafter towed back into the yacht basin where she proceeded to sink adjacent to plaintiffs' boat storage sheds. At plaintiffs' expense, the boat was later destroyed with the consent of Pirate Ports and hauled off. The last of the removal operation was evidently completed in February of 1968.
It appears from the testimony of Mr. Loveless that the cost to repair the damage to the premises caused by the accident of 14 June 1966 was something in excess of $3,000 and the cost to remove the damaged hull from the premises was something in the area of $1,000.
Standing of parties-plaintiff on June 14, 1966. On 14 June 1966, before the boat was dropped for the first time, Marcella Powell had a contract to purchase her former husband's one-half undivided interest in the real property operated as the yacht basin. In addition, she was at that time the owner in fee of a one-half undivided interest in the property. With respect to the interest which she had agreed to purchase from her former husband, she should be treated as a vendee under an executory contract with the immediate right of possession because, under the contract, she had the power to obtain immediate possession by paying the purchase price and waiving the provision for the abstract of title. We conclude, therefore, that she had standing to sue for damages to the premises caused by negligence. See 55 Am.Jur., Vendor And Purchaser § 395, p. 816. See also Arko Enterprises, Inc. v. Wood, Fla.App. 1966, 185 So.2d 734, 738. It is true that on 14 June 1966 there was an outstanding leasehold interest held by Anchorage Yacht Basin, Inc., but this interest was not of any substance. It was contemplated by all parties to the lease that the lease would be terminated upon the closing of the contract between Marcella and Millard Powell, and the lease was in fact cancelled two days after that contract was signed.
The operating corporation established by Marcella and Compere, Anchorage Yacht Haven, Inc., was not in existence at the time the 14 June 1966 damage was inflicted on the property and may, therefore, not have a right to recover for the same, but it does have the right to appear as plaintiff in view of its leasehold interest in the real estate.
Regarding the question of negligence. It is not necessary for us to decide whether or not the judgment denying recovery to the plaintiffs was contrary to the manifest weight of the evidence. As mentioned above, the judgment finds for Pirate Ports of Florida, Inc., on its negligence claim asserted against defendant Fort Lauderdale Transfer, Inc. Without some specific factual finding indicating otherwise, it would appear the finding in favor of Pirate Ports implies a determination that Fort Lauderdale Transfer, Inc., was negligent in the handling of the boat on 14 June 1966. It, therefore, appears that the denial of any recovery on the plaintiffs' claims which *61 are based in part on Fort Lauderdale Transfer's negligence in the same transaction is inconsistent with the court's finding for Pirate Ports.
There is a suggestion in the briefs of the appellees that the denial of recovery to the plaintiffs may be justified by contributory negligence on the part of Millard Powell. Precisely how Millard Powell was negligent is not pointed out, and there does not appear from any of the briefs a satisfactory basis as a matter of fact or law for attributing the negligence, if any, of Millard Powell to any one of the parties-plaintiffs. Being unaided by a specific finding of fact by the trial court on this point, it would appear that the supposed negligence of Millard Powell does not justify the seemingly inconsistent denial of recovery to plaintiffs.
The question of trespass. The pleadings of the plaintiffs and the answer of Pirate Ports clearly indicate that although the presence of the Tondeleyo in the yacht basin was authorized on 14 June 1966, the authorization for her presence was withdrawn sometime after 14 June 1966, but before the complaint was filed. In any event, the presence of the boat in plaintiffs' yard was certainly not authorized subsequent to 8 August 1966, the last date for the removal of the boat under the July 29th order. It appears from the record that the boat remained on the plaintiffs' property until sometime in February 1968 when the last of it was removed by plaintiffs.
A trespass may be committed by the continued presence on land of a structure, chattel or other thing which has been placed on the land with the consent of the landowner or person in lawful possession, if the chattel is not removed after the consent has been effectively terminated. See Restatement of the Law of Torts, Second, § 160. See also 52 Am.Jur., Trespass, §§ 30, 31. It thus appears that the plaintiffs or one of them had a cause of action against either or both Pirate Ports of Florida, Inc., and Fort Lauderdale Transfer, Inc., for trespass occasioned by the unauthorized presence of the boat. Damages recoverable for such a trespass could include the reasonable rental value of the space occupied by the boat during the time of unauthorized occupancy (which would not include an exorbitant unilateral demand of $100 per day which has been suggested as a measure of damage by appellants' brief) and the reasonable cost of removing the boat. See 52 Am.Jur. Trespass, §§ 47, 49, and Restatement of Torts, § 929.
Because of apparent errors in treating the plaintiffs' damage claims, we hold that the interest of justice will be best served by requiring a new trial on such claims and on whatever cross-claims, if any, might lawfully be asserted as between the defendants for indemnification against plaintiffs' said claims. This is the limit of our holding, and this opinion should not be taken as an adjudication of liability or disputed issues of fact. Following retrial, it would be of great assistance in the event of another appeal, if the trial court would enter findings of fact.
Insofar as the final judgment finds against the plaintiffs on their damage claims against defendants and adjudicates cross-claims, if any, as between defendants for indemnity from plaintiffs' claims, it is reversed. In all other respects the final judgment is affirmed. The cause is remanded for further proceedings consistent with the foregoing.
Affirmed in part; reversed in part, and remanded with instructions.
WALDEN and CROSS, JJ., concur.