## 1698

Basil P. MACK, Appellant v. Martha C. EDENS, as Trustee for Robert M. Edens, and Jenny Edens Padgett, Respondents.

(412 S.E. (2d) 431)

Court of Appeals

*Henry H. Taylor,* of *Kirkland, Taylor, Wilson, Moore, Allen & Deneen,* West Columbia, and *James B. Richardson, Jr.,* of *Svalina, Richardson & Smith,* Columbia, *for appellant.*

*Douglas N. Truslow,* Columbia, and *Desa A. Ballard,* of *Ness, Motley, Loadholt, Richardson & Poole,* Barnwell, *for respondents.*

Heard Aug. 26, 1991; Decided Sept. 23, 1991.

Reh. Den. Jan. 15, 1992.

BELL, Judge:

This is an action for trespass to land. Basil P. Mack sued Martha C. Edens, in her capacity as trustee for Robert M. Edens and Jenny Edens Padgett, alleging water from a pond on Edens' land had flooded his adjacent land. Mack sought money damages for injury to his land and an injunction to restrain future flooding. Edens admitted the flooding, but claimed it was done with Mack's consent. The matter was heard by the master in equity. He concluded the flooding constituted a trespass and awarded $7500 in damages for injury to Mack's land. However, he denied the injunction on the ground Mack was guilty of laches. Edens does not appeal from the award of damages for trespass. Mack appeals from the denial of injunctive relief. We reverse and remand for entry of an injunction.

The material facts are not disputed. Mack and Edens are adjacent landowners. Mack acquired his land in 1978. Edens acquired her land in 1983. A stream flows through both properties. Mack is the upstream owner. A pond was built on Mack's land in the late 1940's. In 1958, the then owner of Edens' land, H.B. Spradley, built a pond on his downstream land. Spradley asked for and received permission from Mack's predecessor in title to raise the downstream pond to a level that backed water onto about one acre of the upstream land. Spradley understood he was acting by permission and would have to back the water off the upstream land if the upstream owner asked him to. This permissive arrangement continued between successive owners of both tracts until 1978. From time to time the upstream owner asked the downstream owner temporarily to back the encroaching water off the up-

stream land for various purposes. The downstream owners always complied with these requests.

When Mack purchased the upstream land in 1978, he knew the downstream pond backed onto the property by permission of the previous owner. At the time, Mack was willing to continue the permission. When Edens acquired the downstream property in 1983, she knew the downstream pond was allowed to back onto the upstream land only by permission of the upstream owner.

In 1985, Mack decided to build a road across the dam on his pond to gain access to his new house. A construction contractor advised him that building a new dam with a road on it would be much less expensive than reconstructing the existing dam to support a road. Accordingly, Mack built a new dam and pond upstream from the existing pond. He sought to stabilize and protect the new dam from erosion by backing the water in the old pond against the downstream side of the new dam. He discovered, however, the spillway of the old pond was in such disrepair it was leaking water. This leakage caused the water level of the old pond to be too low to protect the new dam from erosion. Mack thereupon informed Edens of his problem and asked her to lower temporarily the water level of her downstream pond so he could drain his old pond and repair the leaking spillway. Edens refused to back her pond off Mack's land to facilitate the repairs.

As a result of Edens' refusal to lower her pond, Mack was forced to combat erosion of his new dam and access road at a total cost of $7500. He was unable, however, to raise the level of his old pond to protect the new dam from future erosion because Edens still refused to lower her pond so he could repair the leaking spillway. Finally, in August, 1988, Mack sued Edens to stop her permanently from backing water onto his land and to recover damages for injury to his new dam.

The question for our decision is whether the master erred in applying the doctrine of laches to deny Mack injunctive relief.

Under the doctrine of laches, if a party, knowing his rights, does not seasonably assert them, but by unreasonable delay suffers his adversary to incur expense or enter into obligations or otherwise detrimentally change his position, then equity will ordinarily refuse to enforce those

rights, especially if an injunction is asked. *Arceneaux v. Arrington*, 284 S.C. 500, 327 S.E. (2d) 357 (Ct. App. 1985). Whether the plaintiff is barred from relief is to be determined on the facts of each case, taking into consideration whether the delay has worked injury, prejudice, or disadvantage to the other party. *Id.* Laches is an affirmative defense which must be raised by the pleadings. Rule 8(c), S.C.R.Civ. P.[1]

In this case, the master's findings of laches is without evidentiary support. When Mack purchased his land in 1978, he took title without any obligation to permit water from the downstream pond to encroach on his land. The prior arrangement between Mack's predecessor in title and Spradley was no more than a personal license to back water onto the land, revocable at any time by the grantor, as Spradley himself acknowledged. It was not a covenant running with the land nor did it create any interest in the land. When the same permission was extended to Spradley's successors, no additional or new rights were created. They, too, had nothing more than a personal license which could be revoked at will by the owner of the upstream land. Mack, without any duty to do so, simply allowed this permissive encroachment of water to continue after 1978. He was free to revoke his permission at any time.

When Edens purchased the downstream property in 1983, she was aware of the existing arrangement. The deed into Edens expressly provided she assumed any future liability for damage arising from water impounded on the conveyed premises backing or flowing onto the adjacent property. In view of these facts, the master committed patent error when he concluded Edens acquired her land in reliance upon being able to maintain the downstream pond by backing water on Mack's land. Such reliance, had it existed, would have been unreasonable in the circumstances. Edens knew she had no right to encroach on Mack's land without his permission. She

---

[1] Edens neither pleaded nor tried the case on a theory of laches. The master invoked the doctrine *sua sponte* to deny injunctive relief. Although a court may not enter judgment on a ground that was neither pleaded nor proved by the party having the affirmative of the issue, Mack did not raise this error by an exception on appeal. Therefore, we do not address it. *See Glass v. Glass*, 276 S.C. 625, 281 S.E. (2d) 221 (1981); *Parker Peanut Co. v. Felder*, 207 S.C. 63, 34 S.E. (2d) 488 (1945); *Walker v. Frericks*, 292 S.C. 87, 354 S.E. (2d) 915 (Ct. App. 1987); *Southern Region Industrial Realty, Inc. v. Timmerman*, 285 S.C. 142, 328 S.E. (2d) 128 (Ct. App. 1985).

also knew she would have to back her pond off Mack's land if he withdrew permission to encroach. She went ahead and purchased the downstream land.

When Mack discovered the problem of the leaking spillway in 1986, he seasonably asserted his right to have Edens remove the encroaching water so he could make the repairs necessary to stop the erosion of his new dam. Once this demand was made, Edens became a trespasser by wilfully continuing to back water on Mack's land without his permission. *Anchorage Yacht Haven, Inc. v. Robertson,* 264 So. (2d) 57 (Fla. Dist. Ct. App. 1972). Edens, not Mack, was the party guilty of unreasonable delay. She unjustly refused for more than two years to stop her trespass to Mack's land. Only after he sued her did she relent.

Since Mack was not guilty of unreasonable delay in asserting his rights and Edens did not suffer any detrimental change of position attributable to Mack, the master erred in applying the doctrine of laches to bar relief.

Injunction is a proper remedy for a continuous trespass to land. *McClellan v. Taylor,* 54 S.C. 430, 32 S.E. 527 (1899). Because of the permanent and recurring nature of the injury, which cannot otherwise be prevented, the courts should enjoin the continuous trespasser to protect the landowner's property rights from hurt or destruction. *Carter v. Lake City Baseball Club,* 218 S.C. 255, 62 S.E. (2d) 470 (1950); *Shelley v. Hucks,* 282 S.C. 124, 317 S.E. (2d) 470 (Ct. App. 1984).

In this case, Edens should not be allowed to continue an unwarrantable entry on Mack's land. She has no prescriptive right to flood Mack's land. From the beginning she was on the land by Mack's permission only. He had a right to exclude her at any time. If a court refuses to restrain her from backing water on his land, Mack will lose the right to peaceable possession of his land.

We reverse the master's denial of injunctive relief and remand for entry of an order permanently enjoining Edens from backing water on Mack's land.

Reversed and remanded.

SANDERS, C.J., and SHAW, J., concur.