23423

Harold H. WALL, Respondent v. David HUGUENIN, Individually and as Trustee, Cathy Armstrong, Julius A. Huguenin and Edward U. Huguenin, Petitioners.

(406 S.E. (2d) 347)

Supreme Court

*Robert W. Dibble, McNair Law Firm, P.A.,* and *Stephen A. Spitz,* Columbia, and *Darrell Thomas Johnson, Jr.,* Hardeville, *for petitioners.*

*Gary D. Brown, Ridgeland,* and *James B. Richardson, Jr., Svalina, Richardson & Smith,* Columbia, *for respondent.*

Heard May 7, 1991.

Decided June 24, 1991.

CHANDLER, Justice:

We granted certiorari to review the Court of Appeals' decision holding that Petitioners are barred by laches from exercising an option to repurchase property from Respondent. We reverse.

## FACTS

Edward P. Huguenin, Jr., deceased father of Petitioners, was owner of an 825 acre tract known as Roseland Plantation, property which had been in the Huguenin family since 1780.

Following a successful career, which included service as Superintendent of Education, Major in the National Guard and service of four years in the General Assembly, he became an alcoholic. Beset by financial problems and in need of funds, he deeded to his neighbors, Weldon and Harold Wall, all of Roseland except the old family homeplace on which Huguenin resided.

The 1974 conveyance contained the following handwritten option to repurchase, drafted by the parties themselves:

> The agreement between Weldon Wall and Ed Huguenin that *the latter has the right to buy back all of the land* that he presently owns as of this date plus a hundred more acres contiguous to the present holdings *at the appraised valuation* at such time as *convenient* provided the land stays in the name of Ed Huguenin (or immediate family) the appraiser selected by each to select one additional appraiser to determine appraised [value].
> [Emphasis supplied.]

The total purchase price was approximately $223,000. The Walls did not give Huguenin a note to secure the purchase price, nor was any purchase money received at time of the transaction. Rather, Huguenin, his mind and judgment impaired by the alcoholism, relied on the Walls to keep a record of the money owed to him. After the conveyances, the Walls mortgaged Roseland to its full value.

In 1980, Huguenin sued for an accounting, alleging that the Walls had failed to pay amounts due. In 1982 he died a pauper, but his estate ultimately prevailed in the suit. *See Huguenin v. Wall*, 297 S.C. 518, 309 S.E. (2d) 794 (Ct. App. 1983). From a settlement of the judgment, Huguenin's estate regained ten acres of Roseland, including the family cemetery.

In 1986 Respondent, Harold Wall (Wall),[1] contemplated a sale of Roseland for one and a half million dollars; however,

---

[1] Weldon Wall's interest in the land had passed to his brother, Harold. It is uncontested that Harold is imputed with knowledge of the option agreement by virtue of the joint venture of purchasing the land with Weldon.

due to disputes over the ownership of certain roads and hunting rights, he filed an action against Petitioners to quiet title. The case was heard by a special referee who ruled principally in favor of Wall.

Shortly thereafter, Petitioners attempted to exercise the option to repurchase Roseland. Wall then moved before the special referee to reopen the case to determine the validity of the option. Ruling that the repurchase option was "simply not enforceable beyond ten years," he held it barred by laches. Circuit Court affirmed.

On appeal, Court of Appeals held adoption of a ten year rule erroneous. Nonetheless, it found the thirteen year delay unreasonable and concluded that enforcement of the option was barred by laches. *Wall v. Huguenin*, 301 S.C. 94, 390 S.E. (2d) 372 (Ct. App. 1990).

## ISSUE

The sole issue: Are Petitioners barred by laches from exercising the 1974 repurchase option?

## DISCUSSION

The equitable doctrine of laches is defined as "neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done." *Hallums v. Hallums*, 296 S.C. 195, 198, 371 S.E. (2d) 525, 527 (1988); *Gray v. S.C. Public Service Auth.*, 284 S.C. 397, 325 S.E. (2d) 547 (1985). A mere delay in time does not constitute laches. Rather, the determination must be made in light of the specific facts of each case, taking into consideration whether the other party has been prejudiced by the delay. *Hallums, supra.*

When the doctrine is applied to the facts of this case, we find Petitioners entitled to exercise the option to repurchase.

Two express terms of the option militate heavily in favor of Petitioners: (1) the provision that the time of exercise be "convenient" to Huguenin, and (2) the provision that the repurchase price be computed at the land's current appraised value.

We also find persuasive the fact that Roseland possesses a unique sentimental value to the Huguenin family.

## A. TIME OF PURCHASE

The language of the option clearly grants to Huguenin the determination of a time "convenient" for repurchase of Roseland, thereby maximizing the uncertainty of when that might occur: "The latter [Huguenin] has the right to buy back all of the land . . . *at such time as convenient.*" [Emphasis supplied.] Employment by the parties of the word "convenient" demonstrates the peril inherent in the drafting of important legal documents by persons unqualified to understand the impact of the language used.

It can hardly be challenged that for the entire eight years he lived after conveyance of Roseland, it was not "convenient" for Huguenin to exercise the option. An alcoholic, his financial condition rendered him a pauper. Moreover, it was during this period that the property was twice the subject of litigation between the parties, litigation resulting in part from conduct of the Walls. The thirteen year delay in exercise of the option is mitigated by these facts and circumstances.

## B. REPURCHASE PRICE

Court of Appeals relies upon *Linder v. Adcock,* 250 S.C. 383, 158 S.E. (2d) 192 (1967), in which this Court held specific performance of a repurchase contract barred by laches. Critical to the decision in *Linder* was a provision that the property, upon exercise of the option, could be repurchased at its original price. The optionee, waiting nine years, during which the value of the property had substantially appreciated, sought to repurchase at the property's original value. The Court, understandably, held this inequitable and impermissible.

Here, there is no such inequity, so that *Linder* is distinguished.

It is to be noted that Petitioners will reap no "windfall" in exercising the option: they must pay to Wall current market value for the property.

## C. PERSONAL NATURE OF THE PROPERTY

The option agreement must also be examined in light of the highly personal attachment of the Huguenin family to Roseland, their homeplace for two centuries.

When asked by the Special Referee, "What is the value of this property?," Petitioner testified, "To us it is invaluable.

Mainly because it is part of our heritage. You know, there is no dollar value that we can place on it."

Indeed, the language of the agreement manifests the parties' recognition of Roseland as family land by providing that it must stay in the Huguenin name. This indicates that the earlier conveyances were not mere business dealings but, rather, were similar to close family transactions. *Cf. Gregorie & Sons v. Hamlin*, 273 S.C. 412, 257 S.E. (2d) 699 (1979) (where deed selling "Oakland Plantation" to neighbor declared an equitable mortgage).

## CONCLUSION

We hold that, under the facts and circumstances of the record before us, Petitioners are not barred by laches and are entitled to exercise the option to repurchase Roseland at current appraised value.

Reversed.

GREGORY, C.J., and HARWELL, FINNEY and TOAL, JJ., concur.