24081

Nancy W. TERRY, Appellant v. Clyde J. LEE, Respondent.

(445 S.E. (2d) 435)

Supreme Court

*Robert J. Thomas* and *D. Randolph Whitt,* both of *Sherrill and Rogers, P.C.,* Columbia, *for appellant.*

*Harvey L. Golden* and *Douglas K. Kotti,* Columbia, *for respondent.*

Heard May 4, 1994.

Decided June 6, 1994.

TOAL, Justice:

This appeal arises from the family court's dismissal of an action for partition of military retirement under Rule 12(b), SCRCP, for lack of subject matter jurisdiction, failure to state a cause of action, and under the equitable doctrine of laches. We affirm.

## FACTS

Nancy Terry and Clyde J. Lee, who was a Captain on active duty in the United States Navy, were divorced in California on May 3, 1968. Subsequent to the divorce, Captain Lee, who was remarried, retired from the United States Navy in 1973 and relocated to South Carolina. During this same time frame, Nancy Terry married and divorced her second husband and then married a third husband. Nancy Terry is currently a resident of the State of Washington.

In 1990, twenty-two years after the divorce was final, Nancy Terry brought an action to partition Captain Lee's military retirement in a South Carolina Circuit Court which denied Captain Lee's motion to dismiss for lack of subject matter jurisdiction. The circuit court's decision was appealed and we reversed in *Terry v. Lee*, — S.C. —, 419 S.E. (2d) 213 (1992). In *Terry, supra,* we held that the matters presented were marital litigation and that exclusive jurisdiction was found in the family court.

On July 14, 1992, Nancy Terry filed this partition action in the South Carolina Family Court. On August 12, 1992, Captain Lee filed a motion to dismiss for failure to state facts constituting a cause of action, for lack of subject matter jurisdiction, and pursuant to the equitable doctrine of laches. Following oral argument in the family court, the motion to dismiss was granted on the asserted grounds by Family Court Order filed November 19, 1992. It is from this order filed in 1992 that Nancy Terry now appeals.

## ISSUES

Nancy Terry raises the following four issues on appeal:
1. Whether the family court erred by applying South Carolina substantive law rather than California substantive law;

2. Whether the family court erred by dismissing the action based on the terms in the 1968 property settlement agreement;

3. Whether the family court erred in concluding that Nancy Terry's action was barred under federal law; and while not specifically raised, Nancy Terry argues in conjunction with the first issue that

4. The family court erred by dismissing the action under the equitable doctrine of Laches.

## LAW/ANALYSIS

Choice of Laws

The family court, citing *Eichor v. Eichor*, 290 S.C. 484, 351 S.E. (2d) 353 (Ct. App. 1986), determined that South Carolina law was applicable to this action and we agree. In *Eichor*, the Court of Appeals relied on the language of the federal statute which allowed for the division of military retirement as well as the variance in public policy between Texas and South Carolina. Because the decree issued in Texas did not specifically address military retirement, the Court of Appeals concluded that there was no Texas decree to receive full faith and credit.

Terry argues that since the public policy of South Carolina is now in accord with other states,[1] the choice of law rule followed in *Eichor* is no longer applicable. The language of the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (Supp. 1993) (hereinafter the USFSPA), empowers the States to divide federal military retirement and offers guidance on how the division is to be accomplished. Section 1408(c)(4) provides that a state court is not empowered to address military retirement "unless that court has jurisdiction over the [retired service] member by reason of (A) his residence, other than because of military assignments, in the territorial jurisdiction of the court, (B) his domicile in the territo-

---

[1]Prior to 1988, South Carolina treated military retirement as income for purposes of determining alimony awards. This policy was changed with the enacting of S.C. Code Ann. § 20-7-471 *et seq.* (Supp. 1992) (equitable apportionment statute) and the Court of Appeals' decision in *Martin v. Martin*, 296 S.C. 436, 373 S.E. (2d) 706 (Ct. App. 1988) (wherein it was held that military retirement was property for the purpose of equitably dividing marital property).

rial jurisdiction of the court, or (C) his consent to the jurisdiction of the court."

Obviously, the statute requires that this case be heard in South Carolina and 10 U.S.C. § 1408(c)(1) further requires the state court to deal with the property "in accordance with the law of the jurisdiction of such court." When the statutes are read together, the substantive law which must be applied is the law of the state where the action is brought. *See Eichor, supra; see also Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed. (2d) 675 (1989) (wherein the Supreme Court noted that the limitation on residence for the retired member was to prevent forum shopping). We must then address the merits of Mrs. Terry's appeal against the mandates of South Carolina law.

Terms of the Agreement

Terry argues that the family court erred in not interpreting the terms of the agreement as a reservation of the property rights in Captain Lee's retirement. We disagree. The property settlement agreement provides in relevant part:

[i]f it should hereafter be determined by a Court of competent jurisdiction that either of us is now possessed of any property not set forth in this agreement or that one of us has made without the consent of the other any gift or transfer of community property, each of us hereby covenants and agrees to pay the other upon request an amount equal to one-half of the fair market value of such property.

Each of us warrants to the other that neither of us is now possessed with any property of any kind or description whatever other than the property specifically listed in this agreement, or in any addenda thereto, and that neither of us has made without the knowledge of the other any gift or transfer of any property within the last two years.

[ROA at pp. 21-26].

In addition to these clauses, the parties agreed that their intention was to create "a final and complete division of all of our property . . .," and in a later paragraph the agreement also provided that the parties understood that "by this agreement

we intend to settle all aspects of our marital property rights." [ROA at pp. 21-26]. At the time of this agreement, Captain Lee's retirement was not a property right subject to consideration by any court.

The first case to address this issue in the United States Supreme Court held that federal law barred the division of military retirement as a property right. *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed. (2d) 589 (1981). This controversial decision was later the catalyst which gave rise to enactment of the USFSPA in February 1983. The federal legislation left the division of retirement as property up to the discretion of the states. In South Carolina, the acceptance of military retirement as a property interest remained dormant until the Court of Appeals' decision in *Martin, supra*. Meanwhile, the courts of California were far more aggressive and many older divorces were reopened to address retirement divisions. *See Casas v. Thompson*, 42 Cal. (3d) 131, 720 P. (2d) 921, 228 Cal. Rptr. 33 (1986).

Because the California courts did not comport with the intent of Congress when the USFSPA was passed,[2] an amendment to the legislation was enacted in 1990.[3] This amendment to 10 U.S.C. § 1408(c)(1) provides:

[a] court may not treat retired pay as property in any proceeding to divide or to partition any amount of retired pay of a member as the property of the member and the member's . . . former spouse if a final Decree of Divorce, dissolution, annulment or legal separation . . . affecting the member and the member's . . . former spouse (A) *was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat)* [the] amount of retired pay of the member as property of the member and the member's . . . former spouse.

---

[2]Public Law number 101-510, the National Defense Authorization Act for fiscal year 1991, amended 10 U.S.C. § 1408(c)(1). *See also* 6 U.S. CODE CONGRESSIONAL AND ADMINISTRATIVE NEWS 2931, 3004-5, 3166; U.S. HOUSE REPORT NUMBER 101-665 at 279; HOUSE CONFERENCE REPORT NUMBER 101-923 at 609 (wherein the decisions of the California and certain other courts were criticized for reopening, after many years, otherwise final divorce decrees).

[3]This revisiting by the California courts and the apparent disregard of laches as an equitable doctrine is further evidence that the public policy of South Carolina and California are not as compatible as Terry argues in the first issue. *Cf. Eichor, supra*.

[Emphasis added].

Terry argues that the property settlement agreement specifically reserved her rights in accordance with the statutory mandate of the 1990 amendment to the USFSPA. This argument ignores the plain language of the statute. On the present facts, the final divorce decree was entered in 1968, some thirteen years before the date provided as a retroactive date in the amendment. This thirteen-year gap places Terry outside the class of people entitled to relief under the statute. Maintaining that the agreement reserved a right does not aid Terry's position because the statute uses the conjunctive term "and" when it combines the date with the specific reservation requirement. Simply stated, the statute requires compliance with both the retroactive date and a reservation of right. Mrs. Terry's divorce falls outside the retroactive date and now cannot support an action even assuming arguendo that she reserved her rights in Captain Lee's retirement.

Moreover, the language of the agreement itself contextually supports Lee's argument that the clause was drafted to preclude fraud or other hidden property schemes. At the time of the agreement, it certainly was not the intent or in the contemplation of the parties that military retirement could be subject to division as property, especially since it was clearly barred by federal law prior to the enactment of the USFSPA.

Federal Preemption

The family court also held that federal law barred any action by Nancy Terry. We agree since the language of the statute plainly demonstrates that she is outside the specifically mentioned class of beneficiaries. The specific question of federal law applicability was addressed in *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed. (2d) 675 (1989). In *Mansell*, the United States Supreme Court held that Congress' direct response to *McCarty, supra,* required an affirmative grant of authority to the states thereby preempting the states to the extent of the positive legislation.

In the case at bar, the family court construed the 1990 amendment to the USFSPA as barring any further action by Nancy Terry. In light of the plain language of the USFSPA, the act's legislative history, and the clear precedent as to its impact on state substantive law, we can only conclude that

Nancy Terry is not entitled to partition Captain Lee's retirement.

Laches

As an additional sustaining ground, the family court held that *laches* further acted to bar any claim by Nancy Terry. This argument was not specifically addressed in Mrs. Terry's brief except in the context of the California decision in *Casas, supra.* Mrs. Terry asserts that since California law should apply, then the *Casas* decision would control to prevent South Carolina's application of *laches.* As we stated in our analysis of the first issue, we are unpersuaded that California law applies. Consequently, we must apply the doctrine of *laches* as it has developed in South Carolina.

In *Hallums v. Hallums,* 296 S.C. 195, 371 S.E. (2d) 525 (1988), we applied the doctrine of *laches* in the domestic litigation setting. The facts of this case certainly lend themselves to this analysis. In *Hallums,* we noted that to demonstrate *laches,* a party had to establish the following elements: "(1) delay, (2) unreasonable delay, (3) prejudice." *Id.* On the present facts, there can be no question that there was a significant twenty-two-year delay from the date of divorce to the filing of an action in South Carolina. It is equally obvious that Nancy Terry's filing for half of Captain Lee's military retirement "past, present, and future," would work extreme prejudice on Captain Lee.[4] The only question left for discussion is whether her delay was unreasonable.

The fact that Captain Lee was on active duty with the Navy and expecting to retire would have given Nancy Terry some notice that he was entitled to retirement benefits; however, the law at the time would not allow her to assert any property rights. By 1983, the passage of the USFSPA should have placed Nancy Terry on notice that a claim or right in Captain Lee's retirement existed. Captain Lee retired in 1973, a right to the retirement arguably arose in 1983, and now after at least ten more years of inaction, she is pursuing this claim on a twenty-seven-year old divorce decree. Against these facts, it is clear to us that her delay is unreasonable and that the doc-

---

[4]Captain Lee is now seventy years old, retiring from a second career as a teacher, and married to his second wife of twenty-four years.

trine of *laches* is applicable to bar any further claim against Captain Lee's military retirement.

Accordingly, for the reasons stated, the decision of the family court is AFFIRMED.

CHANDLER, Acting C.J., FINNEY and MOORE, JJ., and BRUCE LITTLEJOHN, Acting Associate Justice, concur.