2452

Elizabeth H. CANNON, Respondent-Appellant v. Philip B. CANNON
and Vivian Ripley, Appellants-Respondents.

(467 S.E. (2d) 132)

Court of Appeals

*Paul N. Uricchio, Jr.* and *Allan D. Toporek,* both of *Uricchio, Howe, Krell, Jacobson, Toporek & Theos,* Charleston, *for appellants-respondents.*

Heard Dec. 6, 1995.

Decided Jan. 22, 1996; Reh. Den. Feb. 22, 1996.

CURETON, Judge:

This case involves cross appeals from a final order in a domestic case. The primary issues on appeal concern the identification and valuation of marital property, the award of alimony, and the award of attorney fees and costs. We affirm all issues except costs and division of household furnishings which we remand to the family court.

## SCOPE OF REVIEW

In appeals from the family court, this court has jurisdiction to find the facts in accordance with our own view of the preponderance of the evidence. This broad scope of review, however, does not require this court to disregard the findings of the trial court. *Stevenson v. Stevenson,* 276 S.C. 475, 279 S.E. (2d) 616 (1981). Neither are we required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and weigh their testimony. *Cherry v. Thomasson,* 276 S.C. 524, 280 S.E. (2d) 541 (1981).

## FACTS

Elizabeth and Philip Cannon were married in 1948. They have four children, all of whom are emancipated. At the time of their divorce, the Cannons were both sixty-nine years of age and had been married approximately forty-five years. Both Mr. and Mrs. Cannon have health problems. However, Mr. Cannon has the more severe problems.[1] Mrs. Cannon re-

---

[1] In a latter part of his order, however, the court found that "the physical and emotional conditon of each spouse is relatively good, considering their ages."

ceives a gross monthly retirement income of $1,254 while Mr. Cannon's gross monthly income is $3,496.

The court did not find adultery as alleged by Mrs. Cannon, but granted both parties a divorce on the ground of one year continuous separation. Mrs. Cannon was awarded permanent periodic alimony of $150 per month. The court also found Mr. Cannon in arrears on the payment of temporary alimony in the amount of $30,500. He was ordered to pay $100 per month on the arrearage on Mrs. Cannon received a judgment against his property until the arrearage is satisfied.

With respect to equitable distribution of marital property, the court made a fifty-fifty division. In the equitable division award, the court specifically considered the purchase of thirty-nine acres of land by Mr. Cannon and his partner, Vivian Ripley, with a $37,500 down payment obtained entirely from marital funds after the filing of this action. Given the special circumstances surrounding the thirty-nine acres which on its face is not marital property, the court awarded Mrs. Cannon a special equity of 15% of Mr. Cannon's half interest in the property (i.e. 7.5% of the whole). The court valued this special equity interest at $69,477.50, and ordered that sum paid to Mrs. Cannon within twelve months. The court made additional findings regarding pensions and military retirement benefits which are not issues on appeal. Finally, the court ordered Mr. Cannon to pay $3,500 to a real estate appraiser for services rendered in locating and appraising his separate properties. There was no award of attorney fees to either party.

Both parties have appealed certain provisions in the court's order. We address those issues separately.

### EQUITABLE DISTRIBUTION

After analyzing the factors in the equitable distribution statute, the court found the marital property should be divided as equally as possible. Mrs. Cannon received the family home, an automobile, the cash value of life insurance policies, stocks, and monies received from stock sales. She was also awarded a special equity interest in the thirty-nine acres of unimproved property owned in partnership by Mr. Cannon and Vivian Ripley. The court further found Mrs. Cannon owned a parcel of land on Wadmalaw Island which was non-

marital property. Mr. Cannon received his interest in various other properties he owned in partnership with Vivian Ridley.

### I.

On appeal, Mr. Cannon first contends the court erred in failing to value the personal property in the marital home at $10,000, and further failed to take the value of this personal property into consideration in equitably dividing the marital property. In response to this argument, Mrs. Cannon argues Mr. Cannon failed to cite any statutory or case law imposing a duty upon the trial judge to take this into account when equitably distributing the marital property.

It is well settled that in making an equitable distribution of marital property, the family court must: (1) identify the marital property, real and personal, to be divided between the parties; (2) determine the fair market value of the property so identified; (3) identify the proportionate contributions, both direct and indirect, of each party to the acquisition of the marital property; and (4) provide for an equitable division of the marital property. *Toler v. Toler*, 292 S.C. 374, 356 S.E. (2d) 429 (Ct. App. 1987); *see also* S.C. Code Ann. § 20-7-472 (Supp. 1994). Mrs. Cannon does not argue that the personal property in the marital home was nonmarital. Furthermore, although Mr. Cannon testified he "guessed" the value of all the personal property in the home was $10,000, the court did not rule on this issue in its final order or in its order on reconsideration even though asked to do so. As such, the court's equitable division of the marital estate is incomplete. We therefore remand the issue of identification, evaluation, and equitable distribution of the personal property in the marital home to the family court.

### II.

Mr. Cannon next argues the court failed to consider the nonmarital property owned by Mrs. Cannon, i.e., the Wadmalaw Island property. The court specifically addressed the Wadmalaw Island property which Mrs. Cannon received through a family inheritance and made an unchallenged finding that it was nonmarital and not transmuted into marital property. We find no abuse of discretion and no prejudice to Mr. Cannon in the court's consideration of the nonmarital property.

### III.

Mr. Cannon's primary point of contention in the equitable distribution of the marital property relates to the court's award to a special equity interest to Mrs. Cannon in the thirty-nine acre-tract. A summary of the tortured procedural history of this case is necessary to understand both parties' arguments on the issue.

Mrs. Cannon first filed for divorce in September of 1988. On November 2, 1988, a pendente lite order was issued which, among other things, addressed payment of temporary alimony. The action was stricken from the docket in March of 1989 at her attorney's request after it had been pending for mor than six months without prosecution. A second action was filed in July of 1989 and stricken pursuant to Rule 40(c)(3) in January of 1990. A third action was filed in October of 1990 and stricken pursuant to Rule 40(c)(3) in April of 1991. The fourth and present action was filed in August of 1992. It was also stricken, but was restored to the active roster under the present caption. At the beginning of the hearing, the parties agreed this action would be deemed to have commenced with the filing in September of 1988 and all issues raised by the various pleadings would be tried.

When marital litigation was filed in September of 1988, Mr. Cannon owned a Pioneer Fund Account valued at $37,500. He does not deny the Pioneer fund was marital property on that date. The thirty-nine acres were purchased by Mr. Cannon and Ripley on November 15, 1989 using the money in the Pioneer Fund Account as a down payment on the property. After considering the course of the litigation and the source of the funds used to purchase the property, the court reasoned that equity would require that the assets purchased with marital funds serve as security for the return of the marital asset by way of trust. The court concluded the only equitable way to address the matter was to find Mrs. Cannon had a special vested equity in the thirty-nine acres. The court considered the fact Mrs. Cannon made no payments on the mortgage and did not participate in any decisions regarding the property's acquisition before awarding her a special equity of 15% of Mr. Cannon's share of the property. The purchase price of the property was $365,000 of which $37,500 was the down payment, leaving a mortgage balance of $327,500. The only ap-

praisal furnished to the court valued the property at $1,253,600 with an equity of $926,100. The court valued Mrs. Cannon's special equity interest at $69,477.50. This sum was ordered to be paid to her within twelve months. The court also ordered a lien on the thirty-nine acres until her interest was satisfied.

Since the purchase of the thirty-nine acres did not occur until November 15, 1989 , Mr. Cannon argues the court erred in awarding any interest in the property to Mrs. Cannon because it was not marital property on the stipulated date of commencement of marital litigation and, thus, is not subject to equitable apportionment. Alternatively, Mr. Cannon maintains that even if this court by some "inordinate reasoning" should classify the thirty-nine acres as marital property, Mrs. Cannon should not benefit from the increase in value of the property because she contributed nothing toward that increase. Instead, he argues her interest should be limited to fifty percent of the value of the Pioneer fund which existed in September of 1988. Conversely, Mrs. Cannon claims the court should have awarded her a greater interest in the thirty-nine acres when taking into consideration her various contributions during the marriage.

Marital property is defined by S.C. Code Ann. § 20-7-473 (Supp. 1994) as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation ... regardless of how title is held, except the following, which constitute nonmarital property ... (2) property acquired by either party before the marriage and property acquired after the happening of the earliest of (a) entry of a pendente lite order in a divorce or separate maintenance action. ... " Under this definition, the thirty-nine acres was not marital property in September of 1988 because it did not exist. However, the Pioneer Fund Account was clearly marital property at the time it was used by Mr. Cannon as a down payment on the property. Mr. Cannon testified that without the use of all the funds in the Pioneer Mutual Fund, he would not have been able to purchase the land and, thus, realize the benefit of his investment. Section 20-7-473(5) provides that any increase in the value of nonmarital property which results directly or indirectly from efforts of the other spouse during

the marriage is marital property. Although Mrs. Cannon was not aware of the Pioneer Mutual Fund or the thirty-nine acres until after the marital litigation began, we find she indirectly contributed to the acquisition of property. The increase in the value of the nonmarital thirty-nine-acres would not have occurred but for the down payment made with marital funds which made acquisition of this land possible. Because of Mrs. Cannon's frugal lifestyle and various contributions to the family and marriage as a whole, she broadened Mr. Cannon's ability and opportunity to invest in various projects, including the Pioneer Mutual Fund and the thirty-nine-acre tract. Moreover, on November 2, 1989, less than two weeks before the down payment was made by Mr. Cannon the court issued a temporary order restraining both parties disposing of the marital assets. Mr. Cannon obviously violated this court order in purchasing the property with marital funds.

Under these circumstance, we find no error in the court's decision to award a special equity interest of 15% of Mr. Cannon's share to Mrs. Cannon.[2]

### ALIMONY

The court awarded permanent periodic alimony of $150 per month to Mrs. Cannon. She contends this is insufficient. The court's order thoroughly analyzes the income of both parties from all sources. The court found Mrs. Cannon had a shortfall of net income in the amount of $114 per month while Mr. Cannon had an average of $607.53 per month over expenses. Mrs. Cannon does no dispute these figures. We find no error in the court's award of permanent periodic alimony as the order considers all relevant statutory factors and there is no abuse of discretion.

As previously noted, the court held Mr. Cannon owed an arrearage of $30,500 in temporary alimony and ordered him to

[2] Another issue raised by Mr. Cannon in the equitable division award is the court's purported failure to consider $8,000 in marital funds which Mrs. Cannon had in her control. The record on this matter is sparse and somewhat confusing. It appears some of these funds were used by Mrs. Cannon to pay legal fees. Moreover, we hold the issue has not been preserved for our review. The trial court did not mention thse funds, and Mr. Cannon did not make a Rule 59(e) motion to secure a ruling by the court. *Hudson v. Hudson*, 294 S.C. 166, 363 S.E. (2d) 387 (Ct. App. 1987) (where an issue has not been decided by the lower court, we will not consider it on appeal).

pay $100 per month toward the arrearage with a judgment lien against his property to secure payment. In November of 1988, a pendent lite order was signed ordering Mr. Cannon to pay $500 per month to Mrs. Cannon as temporary support. He was also ordered to pay all utility bills and necessary repair bills on the marital home. Mr. Cannon has not paid the temporary support since March of 1989, although he has been paying the utility bills and property taxes on the marital home. The court found the pendente lite order was still in effect, although the September 1988 action was administratively ended. The court found Mr. Cannon was not in willful contempt for failing to pay temporary support, stating he was under the mistaken impression that the striking of a case from the docket ends all orders entered therein. The court also concluded Mrs. Cannon should bear some of the responsibility for this impression since she did not take steps to enforce the order and was apparently also under the mistaken impression that the striking of the case ended the existing order.

Mr. Cannon argues the court erred in ordering him to pay the arrearage because Mrs. Cannon did not ask for that relief in her original and subsequent pleadings and is guilty of laches because she did not assert her claim for arrearage for an unreasonable and unexplained length of time.

Mr. Cannon's first argument lacks merit because he acknowledges Mrs. Cannon sought the same relief in each subsequent action. We note the last complaint specifically alleges the existence of the order for alimony. As to the second argument, laches is an equitable doctrine consisting of the elements of (1) delay, (2) unreasonable delay, and (3) prejudice. *Terry v. Lee*, 314 S.C. 420, 445 S.C. (2d) 435 (1994). We conclude Mr. Cannon was not prejudiced by the delay and laches has not been established as an affirmative defense.[3]

## ATTORNEY FEES AND COSTS

The court did not award attorney fees to either party finding neither party presented evidence as to the amount of at-

[3] We note Mr. Cannon does not argue the pendente lite order did not remain in force as a matter of law after the administrative dismissal of the 1988 case. *See* Administrative Order for the Family Courts dated June 5, 1992, *South Carolina Court Register*, FC ADMIN-5. Accordingly, we do not address that issue.

torney fees. The court ordered Mr. Cannon to pay $3,500 as part of the costs associated with the appraisal of the thirty-nine acres. The court found Mr. Cannon failed to disclose his ownership interest in the property, and it was only through the efforts of the appraiser that the property was located and appraised. Mrs. Cannon appeals the court's failure to award her attorney fees, and Mr. Cannon appeals the award of costs to Mrs. Cannon.

Mr. Cannon argues the court erred in awarding Mrs. Cannon costs because the appraiser never submitted a bill. At the hearing, counsel and the court discussed this matter and counsel for Mr. Cannon agreed to take the issue up later after he had seen the bill. While the record contains a copy of the appraisal, there is no evidence of a bill and we have no way of knowing when, or if, a bill was submitted to the court. Given the appellate record, we remand this issue to the family court for a redetermination. However, we conclude Mr. Cannon should be responsible for a substantial portion of the bill since he does not dispute the court's finding that he failed to disclose the ownership of the property.

As to attorney fees, the record indicates Mrs. Cannon's attorney asked to submit an affidavit within a reasonable period of time after the hearing. There was no affirmative response to this request by the court. Apparently, counsel submitted an affidavit with a copy of the proposed order. In its final order, however, the court ruled it was unable to consider the award of attorney fees because neither party presented evidence as to the amount of fees incurred.

An award of attorney fees rests within the sound discretion of the trial judge and should not be disturbed on appeal absent an abuse of discretion. *Ariail v. Ariail*, 295 S.C. 486, 369 S.C. (2d) 146 (Ct. App. 1988). As pertains to attorney fee awards, family court judges are given broad discretion. *Edens v. Edens*, 273 S.C. 303, 255 S.E. (2d) 856 (1979). In determining whether to award attorney fees, the court should consider the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, and the effect of the attorney's fee on each party's standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 415 S.E. (2d) 812 (1992); *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E. (2d) 313 (1991). Based upon our indepen-

dent review of the appellate record, we find no abuse of discretion in the denial of attorney fees since Mrs. Cannon is to receive assets in the equitable distribution which would provide her with funds to pay her attorney's fees.

## DISMISSAL OF RIPLEY

Mrs. Cannon alleged Vivian Ripley was the paramour of Mr. Cannon and he had diverted marital funds to her over a number of years. The court found Ripley had prepared the Cannons' tax returns for a number of years, had advised Mr. Cannon on financial matters, and had presented him with investment opportunities. During trial, Mrs. Cannon produced purported love letters written between Ripley and Mr. Cannon during the 1960's. The court denied a divorce on the ground of adultery concluding the letters were remote in time and there was no further proof on the issue. No affirmative relief was awarded against Vivian Ripley in the court's order.

Mr. Cannon argues the court erred in failing to affirmatively dismiss the action against Ripley. Mrs. Cannon retorts that Ripley was a necessary party to the litigation. Whether a necessary party or not, no affirmative relief was awarded against her and we conclude the family court effectively dismissed the action against her. We find no error in the decision and specifically reject Mrs. Cannon's arguments that she should have received a divorce on the ground of adultery, and that she should have received an award against Ripley's portion of partnership properties.

We conclude Issues I and II raised by Mrs. Cannon in her appellate brief are manifestly without merit and need not be addressed. S.C. Code Ann. § 14-8-250 (Supp. 1994). Issue III is not argued by her and is therefore abandoned on appeal. See Nienow v. Nienow, 268 S.C. 161, 232 S.E. (2d) 504 (1977) (failure to argue issue in brief deemed abandonment of exception); Bentrim v. Bentrim, 282 S.C. 333, 318 S.E. (2d) 131 (Ct. App. 1984) (failure to raise issue in an exception constitutes waiver).

The decision of the court is affirmed except that the issues of the appraisal cost and the equitable division of the personal property in the marital home are remanded for reconsideration by the family court.

Affirmed in part and remanded in part.

HOWELL, C.J., and GOOLSBY, J., concur.