THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Joann Garrett, Respondent/Appellant,
 
 
 

v.

 
 
 
 Leroy Garrett, Jr., Appellant/Respondent.
 
 
 

Appeal From Charleston County
 Jocelyn B. Cate, Family Court Judge

Unpublished Opinion No. 2005-UP-580
Heard October 5, 2005  Filed November 15, 2005

AFFIRMED IN PART, 
REVERSED IN PART
AND REMANDED

 
 
 
 Cynthia Barrier Castengera, of Newland and David Dusty Rhoades, of Charleston, for Appellant-Respondent.
 Gregory Samuel Forman, of Charleston and Walter S. Ameika, of Charleston, for Respondent-Appellant.
 
 
 

PER CURIAM:  In this cross-appeal, Leroy Garrett, Jr. (Husband) argues the family court erred in:  (1) awarding Joann Garrett (Wife) thirty-five percent of the marital estate; (2) failing to require Wife to list the values of her life insurance; (3) refusing to require that Wife reimburse Husband for utilities Wife was ordered to pay; and (4) awarding Wife a portion of her attorneys fees.  Wife argues the family court erred in:  (1) including the second mortgage as marital debt; and (2) valuing the marital home.  We affirm in part, reverse in part, and remand.
FACTS
Husband and Wife were married in New York on June 29, 1981.  The parties son, Johnathan, was born September 9, 1981.  The family lived in New York, with Husband and Wife maintaining separate bank accounts and finances, until Husbands retirement in late 1992.  At that time, Husband moved to Charleston, South Carolina, and purchased a home.  At the end of the school year, Johnathan moved to South Carolina to live with Husband.  Although she visited Husband and Johnathan in South Carolina, Wife remained in New York for nearly two more years until she was eligible for an early retirement at her job.  Wife moved to South Carolina into the house with Husband and Johnathan in late 1994.  It is undisputed that Husband purchased the marital home and furnishings without any financial contribution from Wife.  The parties continued to maintain separate finances, with Husband paying all the bills and Wife buying groceries.   
During the parties marriage, Wife made allegations of domestic abuse.  The first occurred in New York in 1981, but the parties remained together.  The final allegation of domestic abuse occurred in December 2001, when the parties argued and Wife alleged that Husband threatened her.  The parties son, Johnathan, intervened in that incident, and the police were called.  Husband was arrested, and the parties maintained separate residences from that point on.  Criminal charges were filed against Husband regarding the domestic incident, and the charges were still pending at the time of the final divorce hearing.  
On January 22, 2002, Wife filed an action for separate maintenance and support, alleging Husband was abusive.  She sought a restraining order against Husband, alimony, use of the marital home, equitable apportionment of the marital assets and debts, and attorneys fees.  Husband answered, denying the abuse.  After a temporary hearing, Wife was awarded exclusive use of the marital home, with Husband paying the mortgage, taxes, and insurance payments associated with the home.  Wife was ordered to pay any of the remaining expenses associated with the home.  Both parties were restrained from bothering the other, and each party was ordered responsible for their own attorneys fees.  
The final hearing on the matter was held on February 4, 2003, and March 18, 2003.  Prior to the hearing, the family court allowed Husband to amend his answer and counterclaim to include a request for a divorce based upon one year of separation and a counterclaim of condonation as to any allegations of abuse.  After hearing the matter, the family court granted the parties a divorce based upon the statutory ground of one years separation and denied Wifes request for alimony.  The court specifically found that Wife did not seek a divorce based upon physical cruelty and that she failed to meet her burden of proving physical cruelty.  The court awarded Husband the marital home.[1]  Considering the first mortgage on the home, the court determined that the home had $47,215 in equity.  The court refused to consider the $43,000 second mortgage on the home as marital debt, finding Wife did not benefit from the second mortgage.  Husband was awarded sixty-five percent of the marital estate and Wife was awarded thirty-five percent.  In effectuating this distribution, Husband was ordered to pay Wife $45,485.37.  Husband was also ordered to pay $4,477.50 of Wifes attorneys fees.    
Upon Husbands motion to alter or amend the order, the family court modified the order to include the second mortgage as marital debt.  Thus, the equity in the marital home was reduced by $43,000 and Wifes cash payout was reduced to $7,692.77.  On August 20, 2003, Wife filed a motion to alter or amend the amended order, arguing that the court erred in considering the second mortgage and that Wife was entitled to alimony, considering the low monetary award she would be receiving in the distribution.  During the pendency of Wifes motion, Husband filed a notice of appeal on August 26, 2003.  Wife also filed a notice of appeal on September 11, 2003.  Wife filed a motion with this court to remand the matter to the family court to hear her motion to alter or amend.  This court granted the motion to remand, and the family court denied Wifes motion to alter or amend on January 28, 2004.  The parties then proceeded with their respective appeals.  
STANDARD OF REVIEW
In appeals from the family court, this court has authority to find the facts in accordance with our own view of the preponderance of the evidence. Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996).  However, this broad scope of review does not require us to disregard the findings of the family court.  Stevenson v. Stevenson, 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981).  We are mindful that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  Bowers v. Bowers, 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct. App. 2002). 
LAW/ANALYSIS

I. Husbands Appeal
Husband argues the family court erred in awarding Wife thirty-five percent of the marital property, failing to require that Wife list her life insurance values, failing to require that Wife reimburse Husband for utilities, and awarding Wife a portion of her attorneys fees.  We address each argument separately below.
A. Equitable Distribution
Husband argues the family court erred in distributing any of the marital estate to Wife because Wife did not make any contributions to the marital estate.  He argues the family court failed to consider the lack of contributions in the award, and thus, the order was deficient.  We disagree.
The apportionment of marital property will not be disturbed on appeal absent an abuse of discretion.  Bungener v. Bungener, 291 S.C. 247, 251, 353 S.E.2d 147, 150 (Ct. App. 1987).  Section 20-7-472 lists fifteen factors for the court to consider in equitably apportioning a marital estate.  S.C. Code Ann. § 20-7-472 (Supp. 2004); Greene v. Greene, 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct. App. 2002).  These factors include:  (1) the length of the marriage and the ages of the parties; (2) the martial misconduct of either party; (3) the value of the marital property; (4) the income and earning potential of each spouse; (5) each partys emotional and physical health; (6) the need of a spouse for training to reach his or her earning potential; (7) each partys nonmarital property; (8) retirement benefits; (9) awards of alimony; (10) whether the marital home should be awarded to one spouse; (11) the tax consequences of a particular distribution; (12) the existence of support obligations from prior marriage; (13) liens or encumbrances on marital property and any debt; (14) child custody arrangements; and (15) any other relevant factor the trial court enumerates in the order.  S.C. Code Ann. § 20-7-472 (Supp. 2004).  
This court will affirm an order for equitable distribution if it can be determined that the family court judge addressed the statutory factors sufficiently for us to conclude she was cognizant of the factors.  Jenkins v. Jenkins, 345 S.C. 88, 100, 545 S.E.2d 531, 537 (Ct. App. 2001).  On appeal, this court looks to the overall fairness of the apportionment.  Johnson v. Johnson, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988).  If the end result is equitable, it is irrelevant that the appellate court would have arrived at a different apportionment.  Id.   
At the final hearing, Wife testified that although Husband paid the mortgage and all the utilities for the marital home, she bought groceries and supplies for the house.  She admitted that Husband cooked and washed the laundry sometimes, but she stated she performed those duties as well.  Wife stated she cleaned the house.  By contrast, Husband testified that he washed the laundry for himself and Johnathan, while Wife only washed her own clothes 90 percent of the time.  Husband admitted that Wife purchased groceries for the house, although he paid all the other household bills.   
The family courts extensive order recited facts concerning the length of the parties marriage, the ages and relative health of each of the parties, how the parties maintained separate finances, the marital assets and debts, monetary and non-monetary contributions of each party to the acquisition of assets, and the income and potential for income of each party.  In awarding Wife thirty-five percent of the marital estate, the family court specifically noted in its order that it was considering all the factors set forth in section 20-7-742.   
We find no error with the family courts award.  Although the evidence supports a finding that Husband financially contributed more during the marriage, Wife also testified regarding some financial contributions and homemaker contributions.  It is clear from the order that the family court adequately considered the statutory factors in awarding Wife thirty-five percent of the marital estate.  Accordingly, we find no error with the equitable distribution.
B. Wifes Life Insurance
Citing Cannon v. Cannon, 321 S.C. 44, 467 S.E.2d 132 (Ct. App. 1996), Husband argues the equitable distribution was incomplete and the case should be remanded for specific findings where the family court did not require that Wife verify the values of her life insurance.  We disagree.

 It is well settled that in making an equitable distribution of marital property, the family court must: (1) identify the marital property, real and personal, to be divided between the parties; (2) determine the fair market value of the property so identified; (3) identify the proportionate contributions, both direct and indirect, of each party to the acquisition of the marital property; and (4) provide for an equitable division of the marital property.  

Cannon v. Cannon, 321 S.C. 44, 48, 467 S.E.2d 132, 134 (Ct. App. 1996) (citations omitted).  Where a court fails to rule upon an issue concerning the identity and value of real and personal marital property, despite a request by the parties to do so, the equitable distribution is incomplete, and the issue should be remanded for specific findings by the family court.  Id. at 48, 467 S.E.2d at 135.  
During the final hearing, Wife testified that she had a life insurance policy with John Hancock, but she did not know the cash value.  She further stated that Husbands counsel could contact John Hancock to obtain the cash value; however, she was not aware that she had to obtain that value prior to coming to court.  Wifes financial declaration indicated that her life insurance cash value was zero.  No further evidence was presented regarding Wifes life insurance.  The family court order did not address the John Hancock life insurance policy.  In ruling on Husbands motion pursuant to Rule 59(e), SCRCP, the family court found that there was no evidence presented of the value of the policy, and it was Husbands burden to present evidence of the value of an asset in which he claimed an interest.   
          Husbands entire argument in support of this issue is only one paragraph long.  In the argument, Husband states that Wife should be sanctioned for failing to disclose the value of her life insurance policy, the value of the life insurance policy must now be obtained upon remand, and the equitable apportionment must be altered to reflect Wifes receipt of the value of the life insurance.  
This issue may not be preserved for appellate review.  Although Husband noted in his motion for reconsideration that Wife failed to supply the value of her life insurance policy, he did not argue that this fact rendered the equitable distribution incomplete or that Wife should be sanctioned.  The record does not reflect that Husband complained about Wifes failure to list the value of her life insurance during the trial.  Because the arguments now raised on appeal were not raised during the final hearing and Husband failed to assert them in his post-trial motion, they are not preserved for appellate review.  See Joubert v. S.C. Dept of Soc. Servs., 341 S.C. 176, 184, 534 S.E.2d 1, 5 (Ct. App. 2000) (holding that issues not raised to or ruled upon by the trial court are not preserved for appellate review).
 In any event, this case can be distinguished from Cannon.  In Cannon, the wife failed to present any evidence regarding the value of the personal property within the marital home, and the husband testified that he guessed the value of the personal property to be $10,000.  The family court awarded the wife the marital home, including the personal property, but did not place any value on the personal property, despite the husbands request to do so both during trial and in a post-trial motion.  This court remanded the issue of the valuation of the personal property, finding the equitable distribution was incomplete where the family court failed to address the issue despite the request to do so.  Cannon, 321 S.C. at 48, 467 S.E.2d at 135.  
In the present case, Husband did not request the family court to value the life insurance policy, nor did he present any evidence regarding the value of Wifes life insurance policy.  It was Husbands burden to present evidence of the value of the life insurance policy if he disputed the value presented by Wife.  See Roe v. Roe, 311 S.C. 471, 479, 429 S.E.2d 830, 836 (Ct. App. 1993) (holding that a party may not complain on appeal that the trial courts valuation is unsupported by the evidence without offering proof of its value at trial); Honea v. Honea, 292 S.C. 456, 458, 357 S.E.2d 191, 192 (Ct. App. 1987) (holding that a party cannot sit back at trial without offering proof, then come to this Court complaining of the insufficiency of the evidence to support the family courts findings).
Because Husband failed to present any evidence regarding the value of the life insurance policy, we find no error with that portion of the family courts equitable distribution.   
C.  Utility Payments
Husband argues the family court erred by failing to require Wife to reimburse him for utility payments she was ordered to pay.  He asserts the family court did not have the authority to overrule the prior order of another judge and the courts reasons for refusing to order reimbursement to Husband were not valid.  We disagree.
There is a long standing rule in South Carolina that one judge may not overrule another judge of the same court.  Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 445, 457, 477 S.E.2d 476, 483 (Ct. App. 1996).  
At the temporary hearing, Wife was awarded temporary use of the marital home.  Husband was ordered to maintain the mortgage payments on the home.  Wife, however, was ordered to pay the remainder of the expenses involving the marital residence.  For several months, Husband continued to make utility payments through automatic drafts of his bank account.  Husband sought reimbursement of $930.04 towards utility payments from Wife.  
During the final hearing before a different family court judge, Wife admitted that she initially failed to make the utility payments for the marital home.  However, Wife stated she had difficulty in getting the utility bills transferred into her name.  She testified that SCE&G told her that she could not get the electric bill in her name until Husband stopped the automatic draft from his bank account and she provided a copy of the temporary order.  She was informed the same thing when she attempted to get the Comcast television cable bill placed in her name.  She eventually was able to transfer the SCE&G, Comcast cable, and water bills into her name several months after the temporary hearing.  Husband, however, refused to allow the telephone account to be transferred to Wifes name.  Wife testified that Husband, as a retired telephone company employee, received some reimbursement from the telephone bills as a benefit.  In order for Wife to pay the telephone bill pursuant to the temporary order, Husband would forward the telephone bill to Wife and she would reimburse him.  Wife testified that approximately six months prior to trial, however, Husband refused to forward the telephone bill to her, and he was still paying the telephone bill at the time of the final hearing.     
The family court denied Husbands request for reimbursement, finding that:  (1) Husband failed to seek a remedy to the problem during the pendency of the action; and (2) some of the problems Wife had with paying the utilities were due to Husbands uncooperativeness.  In his motion for reconsideration, Husband argued that the court erred in failing to order that Wife reimburse him because there was no legal justification for Husband to seek a remedy during the pendency of the action.  He also argued that the family court erred in not requiring the wife to be responsible for her obligations in the Order, yet the court, by this rationale, would then justify the husband to chose not to pay court ordered obligations he would have pursuant to an order, which is unjustifiably inconsistent.  
We find the family courts refusal to order that Wife reimburse Husband did not amount to the overruling of the prior family court judges order.  The family court did not change the section of the prior order that required Wife to be responsible for utility payments; the court merely ruled that reimbursement was unnecessary for the few months Wife failed to pay due, in part, to Husbands uncooperativeness.  Further, considering the fact that Husband obtained sixty-five percent of the marital estate in distribution, Husband was in the better position to absorb this cost.  We find the family court did not abuse its discretion in ruling reimbursement was not necessary.  
D.  Attorneys Fees
Husband asserts the family court erred in awarding Wife a portion of her attorneys fees because the court only considered the amount of the award and failed to consider whether the award was warranted.  We agree.
The family court may order payment of attorneys fees to a party pursuant to South Carolina Code section 20-3-130(H) (Supp. 2004).  Whether to award attorneys fees is a matter within the sound discretion of the trial court, and the award will not be reversed on appeal absent an abuse of discretion.  Bakala v. Bakala, 352 S.C. 612, 633-34, 576 S.E.2d 156, 167 (2003).  An abuse of discretion occurs either when a court is controlled by some error of law, or where the order is based upon findings of fact lacking evidentiary support.  Patel v. Patel, 359 S.C. 515, 529, 599 S.E.2d 114, 121 (2004).  
In determining whether an award of attorneys fees should be granted, the family court should consider:  the parties ability to pay their own fee; the beneficial results obtained by counsel; the financial conditions of the parties; and the effect of the fee on each parties standard of living.  E.D.M. v. T.A.M., 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992).  To determine the amount of an award of attorneys fees, the court should consider:  the nature, extent, and difficulty of the services rendered; the time necessarily devoted to the case; counsels professional standing; the contingency of compensation; the beneficial results obtained; and the customary legal fees for similar services.  Glasscock v. Glasscock, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).
Wife initially filed an action for separate maintenance and support alleging physical abuse and requesting full use and possession of the marital home, alimony, an equitable division of the marital property, and attorneys fees.  In the final order, the family court determined that Wife failed to meet her burden of proving Husband committed physical cruelty, and Wife could earn between $17,000 and $32,000 per year in income in addition to her pension.  Considering Wifes imputed income of at least $17,000 per year in addition to her pension, the family court determined Wife was not in need of alimony.  The family court awarded permanent possession of the marital home to Husband.    
Nevertheless, the family court ruled in its final order that contribution to Wifes attorneys fees was necessary and proper and has been justified by the evidence presented in Court.  The court noted that Wife had to retain counsel in order to pursue the divorce.  In setting the amount of the fees, the court considered the result accomplished, the fact that Wifes attorney was actively engaged in family court matters, amount of time spent on the case, and the reasonableness of the attorneys rate.  The order noted that factors and criteria for setting attorneys fees were contained in Glasscock v. Glasscock, 304 S.C. 158, 403 S.E.2d 313 (1991), Nienow v. Nienow, 268 S.C. 161, 230 S.E.2d 504 (1977), and Atkinson v. Atkinson, 279 S.C. 355, 309 S.E.2d 14 (Ct. App. 1983).  The court stated that based upon all of the aforementioned standards, Husband should contribute $4,477.50 towards Wifes attorneys fees.  Husband argued in his post-trial motion that the family court failed to consider whether the award of attorneys fees was justified, but the family court refused to reconsider the matter.  
In determining that attorneys fees should be awarded, the family court merely noted that the evidence supported an award of attorneys fees.  We cannot determine from this statement in the order whether the court considered all the facts in determining whether to award attorneys fees.  Specifically, we note that the beneficial result obtained by Wifes attorney was negligible.  See Sexton v. Sexton, 310 S.C. 501, 503, 427 S.E.2d 665, 666 (1992) (The beneficial result obtained by counsel is a factor essential to determining whether an attorneys fee should be awarded.) (emphasis added).  Wife did not obtain a finding of physical abuse, alimony, or the marital home.  Further, the family court found Wife had the ability to earn income to support herself.  Presumably, this meant that Wife had the ability to earn income to pay her own attorneys fees.  
Because we cannot determine from the order that the court adequately considered all the factors necessary in deciding whether an award was appropriate, we reverse the award of attorneys fees and remand the matter to the family court for further consideration.    
II.  Wifes Appeal
          Wife argues the family court erred in including the second mortgage as marital debt and in valuing the marital home.  We address each argument separately below. 
A. Second Mortgage
Wife argues that the family court erred in including the second mortgage as marital debt where the court specifically considered that the parties maintained separate finances.  She asserts that she had no knowledge of the debt and did not receive any benefit from it.  Thus, she argues, it was error for the court to require her to pay thirty-five percent of the second mortgage.  We disagree.
Section 20-7-472 requires that a family court must consider and apportion marital debt when equitably dividing the marital estate.  S.C. Code Ann. § 20-7-472(13) (Supp. 2004) (In making apportionment, the court must give weight . . . to the following factors:  (13) liens and any other encumbrances upon the marital property, which themselves must be equitably divided, or upon the separate property of either of the parties, and any other existing debts incurred by the parties or either of them during the course of the marriage.); Wooten v. Wooten, 364 S.C. 532, 546, 615 S.E.2d 98, 105 (2005) (Marital debt, like marital property, must be specifically identified and apportioned in equitable distribution.).  Thus, there is a rebuttable presumption that either parties debt which was incurred prior to the marital litigation is a marital debt that must be considered in equitable apportionment.  Wooten, 364 S.C. at 546, 615 S.E.2d at 105; Hickum v. Hickum, 320 S.C. 97, 102, 463 S.E.2d 321, 324 (Ct. App. 1995).  When the debt is incurred before marital litigation begins, the burden of proving a debt is nonmarital rests upon the party who makes such an assertion.  Wooten, 364 S.C. at 547, 615 S.E.2d at 105. 
Husband took out a second mortgage on the marital home approximately five years prior to the final hearing.  At the time of the final hearing, the balance owed on the second mortgage was $43,000.  Wife testified she did not know about the second mortgage until after the parties separation, she received no benefit from the mortgage, and she was told by Husband that the money was used to purchase furniture.  Wife indicated some disbelief regarding the use of the funds, stating that the parties did not have furniture in the house worth that value.  Wife admitted that Husband purchased all of the household furnishings.  Husband testified at the final hearing that the second mortgage was used to purchase furniture and various items for the house, including a freezer and a computer, and to pay off credit cards.    
In the final divorce decree, the family court noted that the furnishings Husband claimed were purchased with the second mortgage do not, by any stretch of the imagination, come close to $43,000.  The court noted that the monies were used to consolidate Husbands credit cards, of which he admitted Wife should not have a duty to pay, or in some other fashion he chose not to elaborate.  Noting that Wife did not benefit from the vast majority of the proceeds of the second mortgage, the court ruled that the second mortgage would not be included as marital debt to reduce the equity in the marital home.  After considering Husbands post-trial motion to amend the order, the family court ordered that the second mortgage should be included as marital debt because Wife failed to present any evidence that would overcome the presumption that the debt was marital.  Thus, the equity in the marital home was reduced from $47,215 to $4,215.    
We find no error with the family courts decision to include the second mortgage as marital debt.  Although there was very little evidence specifying precisely how the money from the second mortgage was spent, Husband testified that he purchased items for the home with the funds.  The only evidence Wife presented was her testimony that she did not believe the furnishings in the home were worth the value of the second mortgage.  Wife did not present any evidence that would overcome the presumption that the funds from the second mortgage were spent to benefit the marriage.  Under these circumstances, the family court did not abuse its discretion in determining the second mortgage was a marital debt thereby reducing the equity in the marital home.
Even assuming that the family court erred, we find any potential error in including the second mortgage as an additional expense has been compensated for.  Since the August 2003 final amended order was stayed pending this appeal, Wife has remained in the marital home pursuant to the temporary order for over twenty-five months without having to pay rent or contribute towards the mortgage payments.  Husband testified at the final hearing that he made a total of $1,250 in monthly mortgage payments.  Thus, Husband has made over $31,250 in mortgage payments since the final amended order.  Wife has substantially benefited from Husbands payments on this marital asset to which she has not contributed.  Clearly, any potential error including the second mortgage as a marital debt has been rectified by Wife living in the marital home without having to contribute towards this asset.  
B.  Value of Marital Home
Wife argues the family court erred in valuing the marital home at only $113,460.  We disagree.
In making an equitable distribution of marital property, the family court must identify real and personal marital property and determine the propertys fair market value.  Cannon v. Cannon, 321 S.C. 44, 48, 467 S.E.2d 132, 134 (Ct. App. 1996); Noll v. Noll, 297 S.C. 190, 192, 375 S.E.2d 338, 340 (Ct. App. 1988).  In the absence of contrary evidence, the court should accept the value the parties assign to a marital asset.  Noll, 297 S.C. at 194, 375 S.E.2d at 340-41.  The family court does not abuse its discretion in valuing a marital asset within the range of values testified to by the parties at trial.  See Woodward v. Woodward, 294 S.C. 210, 215, 363 S.E.2d 413, 416 (Ct. App. 1987) (noting the family court did not abuse its discretion in valuing real property within the range of evidence offered by the parties at trial).  
At the final hearing, Wife presented an appraisal valuing the marital home at $124,000 as of January 30, 2004.  Husband claimed the house was valued at $95,200 based upon the tax assessment value.  The family court found Husbands value unreliable, elected to choose a value from among the range of values presented at trial, and determined the marital home was valued at $113,460.  
 It does not appear from the record that Wife argued in a post-trial motion that the family court erred in reaching this value.  Thus, the issue is not preserved for appellate review.  Joubert v. S.C. Dept of Soc. Servs., 341 S.C. 176, 184, 534 S.E.2d 1, 5 (Ct. App. 2000) (holding that issues not raised to or ruled upon by the trial court are not preserved for appellate review).
In any event, we find no error with the family courts decision to choose a value among the range of values presented at trial.  Wifes valuation took place nearly one year after marital litigation began, and the tax assessment valuation was deemed unreliable.  In these circumstances, the family court did not abuse its discretion in valuing the marital home within the range of evidence presented at trial. 
CONCLUSION
Based on the foregoing, the family courts order is 
AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
GOOLSBY, BEATTY, and SHORT, JJ., concur.

[1]  Husband was awarded the marital home in the final divorce decree, and Wife has not appealed from this award.  However, Wife has remained in the marital home, pursuant to the temporary order without paying Husband any rent, pending this appeal.