THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Lillie M. Privette, Dillion Witmore, Michael Tyler Davis,
and Crystal Outlaw, Defendants,

Of whom Dillion Witmore is the Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2017-001333

———————

Appeal From Chesterfield County
Cely Anne Brigman, Family Court Judge

———————

Unpublished Opinion No. 2018-UP-342
Submitted July 13, 2018 – Filed July 25, 2018

———————

**AFFIRMED**

———————

Earnest Deon O'Neil, of Columbia, for Appellant.

Tiffany Brooke Allen, of the South Carolina Department
of Social Services, of Hartsville, for Respondent.

C. Heath Ruffner, of Harris McLeod & Ruffner, of Cheraw, for the Guardian ad Litem.

---

**PER CURIAM:**  Dillion Witmore (Father) appeals the family court's order removing his minor son (Child) and allowing the South Carolina Department of Social Services (DSS) to forego reasonable efforts to reunite Father with Child.[1] On appeal, Father argues the family court erred in (1) allowing DSS to forego reasonable efforts for reunification, (2) admitting Facebook posts into evidence, and (3) admitting Investigator Jason Franklin Catoe's testimony that Father caused Lillie Privitte's (Mother's) injuries.  We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414-15, 709 S.E.2d 666, 667 (2011); *see also Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.  However, when reviewing evidentiary or procedural rulings, this court uses an abuse of discretion standard.  *See Stoney v. Stoney*, Op. No. 27758 (S.C. Sup. Ct. filed April 18, 2018) (Shearouse Adv. Sh. No. 16 at 9).  The burden is upon the appellant to convince this court the family court erred in its findings.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 652.

As to the admissibility of the Facebook posts, Father failed to assert an argument or supporting authority.  Accordingly, we find Father abandoned this issue.  *See Cannon v. Cannon*, 321 S.C. 44, 54, 467 S.E.2d 132, 138 (Ct. App. 1996) (holding an issue not argued in the appellant's brief is deemed abandoned on appeal); *First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (holding appellant was deemed to have abandoned issues on appeal, where he failed to provide any argument or supporting authority).

As to the admissibility of Investigator Catoe's testimony that he believed Father caused Mother's injuries, the family court did not abuse its discretion.  *See Stoney*,

---

[1] The family court also authorized DSS to forego reasonable efforts at reunifying Mother to Child and her other two children from a prior relationship, Sister and Brother.  The record on appeal suggested Mother had primary custody of Sister and Brother.

Op. No. 27758 (S.C. Sup. Ct. filed April 18, 2018) (Shearouse Adv. Sh. No. 16 at 9) (stating an abuse of discretion standard is used for reviewing a family court's evidentiary or procedural ruling); *S.C. Dep't of Soc. Servs. v. Lisa C.*, 380 S.C. 406, 411, 669 S.E.2d 647, 650 (Ct. App. 2008) ("The admission or exclusion of evidence is left to the sound discretion of the [family] court, and the court's decision will not be reversed absent an abuse of discretion." (quoting *State v. Morris*, 376 S.C. 189, 205, 656 S.E.2d 359, 368 (2008))).  In August 2016, Mother filed a police report against Father for domestic violence.  Investigator Catoe investigated Mother's report, which included securing an interview of Mother and procuring her medical records.  Based on his investigation, Investigator Catoe charged Father with second-degree domestic violence.  After Investigator Catoe testified regarding his decision to charge Father, DSS asked Investigator Catoe if, "based on [his] investigation, [he] believe[d] [the injuries seen in the photos] are the injuries that [Mother] sustained at the hands of [Father]," and Investigator Catoe agreed.  Father objected on the ground of speculation because "[t]here [was] no way [Investigator Catoe could] reach that conclusion that those injuries [Mother] sustained [were] at the hands of [Father]."  We find Investigator Catoe's testimony was not speculation because it was based on his investigation of Mother's report to police.  Moreover, inherent in Investigator Catoe's testimony regarding his decision to charge Father was his belief Father caused Mother's injuries and Father did not object to this testimony.  Thus, we find the family court did not abuse its discretion in admitting Investigator Catoe's testimony regarding the cause of Mother's injuries.

Next, based on a de novo review of the evidence, the family court did not err in allowing DSS to forego reasonable efforts at reunification.  *See Stoney*, Op. No. 27758 (S.C. Sup. Ct. filed April 18, 2018) (Shearouse Adv. Sh. No. 16 at 9) (clarifying a reviewing court analyzes "family court matters" using a de novo standard of review).  Although Father contends the family court erred in relying on the allegations of domestic violence as a ground to forego reasonable efforts at reunification in light of the fact Father had no conviction for domestic violence, a preponderance of the evidence supports a determination that DSS could forego reasonable efforts at reunification because Father subjected Child to severe or repeated abuse.  *See* S.C. Code Ann. § 63-7-1640(C)(1)(a) & (b) (Supp. 2017) (providing the family court can authorize DSS to terminate or forego reasonable efforts when "the family court determines . . . the parent has subjected the child or another child while residing in the parent's domicile to . . . severe or repeated abuse . . . [or] neglect").  Father subjected Child to severe or repeated abuse or neglect prior to Child's placement in foster care.  Here, DSS provided testimony that (1) Father engaged in domestic violence against Mother; (2) Father evaded

police and DSS with Mother and the children following the issuance of the warrant for his arrest for domestic violence; (3) Sister was in charge of taking care of Brother and Child; and (4) Father or Mother exposed the children to drugs based on the fact Brother and Sister tested positive for marijuana.

Investigator Catoe testified he investigated a domestic violence incident that occurred on August 19, 2016, between Mother and Father after Mother filed a police report against Father. Investigator Catoe explained he observed Mother's injuries the day she filed the report and during the course of his investigation, found fresher photos of her injuries on her Facebook page. According to Mother's Facebook post, the incident on August 19 resulted in three cracked ribs and a ruptured eardrum, and she needed surgery on her eye. Investigator Catoe charged Father with domestic violence based on his investigation and review of Mother's interview and medical records. John Bittle, a DSS childhood service investigator, testified police and DSS were unable to locate the children from October 19, 2016, through December 9, 2016, because Mother and Father were "on the run." Bittle stated the children were found on December 9, 2016, in the care of Father's parents, and Father's whereabouts were unknown. Bittle also stated Sister and Brother tested positive for marijuana, but Father's parents did not test positive for marijuana. Bittle explained Child was not tested due to the expense of testing a baby; the record on appeal provides no indication Sister and Brother were ever separated from Child during that time. Additionally, Father was "on the run" with Sister, who was of school age, but not enrolled in school. Robin Tyler Griggs, a forensic interviewer, recalled interviewing Sister, who stated Mother and Father were "lazy" and she would get up and change Child's diaper, fix him a bottle, and prepare cereal for herself and Brother. Griggs also recalled Sister stating that when Mother and Father fought and she became scared, she would take Brother and Child into a closet and she would "set[] things up with the pillow so that [Child], which is the baby, would not roll off and get hurt." In light of the fact "the child's health and safety must be the paramount concern," we find the family court did not err in authorizing DSS to forego reasonable efforts at reunification. S.C. Code Ann. § 63-7-1640(A).

Father's failure to participate or contact DSS following Child's removal offers further support for the family court's decision to forego reasonable efforts. *See* S.C. Code Ann. § 63-7-1640(C)(1)(e) (Supp. 2017) (providing the family court can authorize DSS to terminate or forego reasonable efforts when "the family court determines . . . the parent has subjected the child or another child while residing in the parent's domicile to . . . abandonment"). Here, Father had not meaningfully participated in Child's life during the approximately four months Child was placed

in foster care other than the first day of the merits hearing. Gail Peterson, the Guardian ad Litem stated Father visited Child only once in the four months Child had been in foster care and Father did not respond to DSS's communications or make an effort to work a placement plan.

Finally, it was in Child's best interest for the family court to allow DSS to forego reasonable efforts for reunification based on the fact Father visited Child only once in the approximately four months Child was in foster care, and Father had made no effort to begin a placement plan during that time or otherwise contact DSS. *See* S.C. Code Ann. § 63-7-1640(F) (Supp. 2017) ("In determining whether to authorize [DSS] to terminate or forego reasonable efforts to preserve or reunify a family, the court must consider whether initiation or continuation of reasonable efforts to preserve or reunify the family is in the best interests of the child."). Accordingly, we find the family court's determination DSS could forego reasonable efforts at reunification was in Child's best interest.

**AFFIRMED.**[2]

**HUFF, GEATHERS, and MCDONALD, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.